## WAYNE CIRCUIT JUDGES *v.* WAYNE COUNTY

1. CONSTITUTIONAL LAW—COURTS—DETERMINATION OF ISSUES.
   A court does not decide a constitutional issue except as a last resort.

2. COURTS—JUDICIAL PERSONNEL—STATUTES—CONSTRUCTION.
   The statutes authorizing hiring of law clerks, a judicial assistant, and additional probation officers authorize judges to determine the need for such personnel, to fix their compensation, and, if need be, to require the county to appropriate funds required to pay that compensation (MCLA §§ 600.1471, 600.1481, 771.7, 771.12).

3. SAME—PROBATION OFFICERS—STATUTES—LEGISLATURE—INTENT.
   Legislature, in enacting statutes providing for the exercise of the probation power by the courts, did not intend that that power should be limited by the number of probation officers available or that the exercise of the probation power should be frustrated by failure of a county board of supervisors to provide the necessary funds (MCLA §§ 771.7, 771.12).

4. SAME—JUDICIAL PERSONNEL—BOARD OF SUPERVISORS.
   The legislature did not intend to vest in the county board of supervisors discretion to determine, through allocation of funds, whether legislation regarding hiring of judicial personnel will be implemented.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law § 111.
[2, 3] 30A Am Jur, Judges § 34.
[4, 5] 20 Am Jur 2d (Pocket Part), Counties § 28 *et seq.*
[6] 20 Am Jur 2d, Courts § 111 *et seq.*
[7] 30A Am Jur, Judges § 99 *et seq.*

5. SAME—JUDICIAL PERSONNEL—BOARD OF SUPERVISORS—FINANCIAL INABILITY.

A county board of supervisors should not be allowed to plead financial inability to provide funds required for salaries of judicial personnel authorized by statute unless the shortage of funds can be demonstrated to be attributable to obligations having the same rank and priority in terms of legislative mandate upon the board of supervisors as do appropriations for such personnel.

6. SAME—JUDICIAL PERSONNEL—REASONABLENESS—SUPREME COURT —SUPERINTENDING CONTROL.

Court of Appeals does not pass on question of reasonableness of request of circuit judges for funds for additional probation officers, law clerks, and a judicial assistant, since Supreme Court and not Court of Appeals is vested with power of superintending control over general practices of trial courts (Const 1963, art 6, § 4).

7. SAME—CIRCUIT JUDGE—DISQUALIFICATION—INTEREST.

Circuit judge, sitting by assignment in another county, was not disqualified from presiding at trial in case of circuit judges of the county of assignment seeking mandamus to compel appropriation of funds for additional judicial personnel on grounds of interest in outcome of case where judge's only interest was that of a similarly situated circuit judge who might someday wish to take such action himself.

Appeal from Wayne, Beer (William J.), J., presiding. Submitted Division 1 December 20, 1968, at Detroit. (Docket No. 6,462.) Decided February 10, 1969. Leave to appeal granted April 11, 1969. See 381 Mich 814, 383 Mich.

Complaint by the judges of the Third Judicial Circuit against Wayne County, its Board of Supervisors, its Board of Auditors, and its treasurer, for a writ of mandamus to compel the appropriation of money for salaries of additional personnel. Judgment for plaintiffs. Defendants appeal. Affirmed.

*Travis, Warren, Nayer & Burgoyne,* for plaintiffs.

*William L. Cahalan,* Prosecuting Attorney, and
*Aloysius J. Suchy, David R. Kaplan,* and *Thomas
P. Smith,* Assistant Prosecuting Attorneys, for defendants.

Amici Curiae:

*Sol Rubin, Jacob D. Fuchsberg* and *Robert E.
Juceam,* for National Council on Crime and Delinquency.

*A. D. Ruegsegger, George T. Roumell, Jr.,* and
*John Feikens,* for Detroit Bar Association.

LEVIN, J. The judges of the third judicial circuit,
Wayne county, brought this action to compel the
defendants, county of Wayne, its boards of supervisors and auditors and its treasurer to provide
funds for 11 additional probation officers at a salary
of $8,736 per year, 8 law clerks at a salary of $9,000
per year and a judicial assistant at a salary of
$25,000 per year.

The trial judge granted the plaintiffs the requested relief and a writ of mandamus issued directing the defendants to provide the necessary funds.

The trial judge's bench-dictated opinion, which
was expressly incorporated by reference into the
judgment, declared that as a matter of constitutional
principle based upon section 1 of the judicial article
of Michigan's constitution,[1] circuit judges have the
inherent power to determine their requirements for

---

[1] "The judicial power of the state is vested exclusively in one
court of justice which shall be divided into one supreme court, one
court of appeals, one trial court of general jurisdiction known as
the circuit court". Const 1963, art 6, § 1.

supporting personnel, to fix the salaries of such personnel and to compel a local legislative body, such as the board of supervisors of Wayne county, to provide the necessary funds. This, said the trial judge, follows as a matter of necessity so as to preserve the independence of the judiciary and to protect the judicial function.[2]

Section 1471 of the revised judicature act authorizes a circuit court to "employ law clerks for the court or for each judge of the court." Section 1481 of that act authorizes a circuit court having 10 or more judges, as does the Wayne circuit court, to employ a judicial assistant. Sections 1471 and 1481 authorize the appointing judges to "fix" the compensation of those so employed "within the sum appropriated therefor" by the legislative body of

---

[2] The following is from the opinion of the trial judge:

"But lest there be misunderstanding, when the circuit judges of the State of Michigan—and these are circuit judges of the State of Michigan, and I have tried to emphasize in this opinion that they are not part of the Wayne county government as such—have come to a conclusion that they need the additional personnel, and there is no challenge as to the real need for this personnel, no challenge that the judges themselves are acting arbitrarily or capriciously, does the county of Wayne and the other defendants have the right to substitute their judgment for the judgment of the judges in this area? My answer to that in this opinion as a matter of law is, 'No, they do not.'

"I heard the testimony of the defendants on these other great social and human needs, admitted and true, but can that be used to say in effect that the needs of the courts may not be filled first where these needs are not unreasonable? My answer to that as a matter of law in this opinion is, 'No.'

"As a matter of law, constitutionally speaking, the reasonable needs of the courts so far as Wayne county is concerned had an ascendency over these other demands in the budget. And if this were not true, it could always be urged and the county government could give its priorities where it saw fit; and thus slowly but surely we could visualize where the courts would shrink and shrink. That is only a possibility. I am not in this opinion saying that that is what the county officials might do.

"I am trying, in this opinion, to put at rest fundamentally that a county government such as here in Wayne county may not so far as the true needs of the courts are concerned balance off against all the other needs of other county expenditure demands and requirements."

the governmental unit, other than the State of Michigan, which pays the compensation of the judges (MCLA §§ 600.1471, 600.1481 [Stat Ann 1962 Rev §§ 27A.1471, 27A.1481]). The local governmental unit which pays the compensation of Wayne circuit judges is Wayne county and its board of supervisors is the legislative body of Wayne county.

The statutory authority for the appointment of probation officers is contained in sections 7 and 12, ch 11, of the code of criminal procedure.[3]

The portion of the judgment directing the defendants to provide funds for hiring law clerks and a judicial assistant was rested on both the power conferred by the legislature in RJA § 1471 (law clerks) and § 1481 (judicial assistant) and the power conferred by the people in § 1 of the judicial article of the constitution. The portion of the judgment directing the defendants to provide funds for hiring additional probation officers was based solely on the asserted constitutionally-conferred power to hire necessary supporting personnel.

On this appeal, Wayne county asserts that its county board of supervisors exercises legislative power and that the right to determine how the county's money shall be spent is vested solely in the

---

[3] Section 7, ch 11 of the code of criminal procedure (MCLA, § 771.7 [Stat Ann 1968 Cum Supp § 28.1137]) provides that the circuit court may recommend assistant probation officers who may be appointed by the Michigan corrections commission "who shall receive such compensation as the board of supervisors of the several counties shall provide." Section 12 (MCLA § 771.12 [Stat Ann 1954 Rev § 28.1142]) provides that the salary of each assistant probation officer shall be paid out of the treasury of the county within which the probation officer acts, "where provision has been made by the board of supervisors of such county * * * for their payment. * * * Said salary * * * shall be paid by the * * * county treasurer upon an order of the clerk of the court, properly audited by the officer or board of the * * * county in whom the power or duty of auditing accounts is vested."

The county does not challenge the plaintiffs' assertion that the Michigan corrections commission would assuredly appoint such candidates for assistant probation officer as the plaintiffs designate.

board of supervisors and that the doctrine of separation of powers[4] bars the plaintiff circuit judges from obtaining the relief granted by the trial judge.

Nevertheless, the county acknowledges, despite the separation of powers doctrine, that the judicial branch may direct the appropriation of funds required for judicial purposes where the deprivation of funds is of such serious proportions that the failure to appropriate may properly be characterized as unreasonable and arbitrary, but the judges bear the burden of establishing such capriciousness.

The judges, on the other hand, assert that they satisfy their burden when they certify that the proposed expenditure is necessary in their judgment for the proper functioning of the judicial system, and the appropriating authority has the duty to provide the required funds unless it can show that the requisition is unreasonable or arbitrary.

Thus, both the judges and the county would bound the limits of their own discretion by a standard of arbitrariness, and each claims for itself the middle or "reasonable" ground.

The county does not deny the need for additional probation officers,[5] law clerks and a judicial assist-

[4] "The powers of government are divided into three branches; legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Const 1963, art 3, § 2.

[5] An affidavit of the chief probation officer of Wayne county attached to the plaintiffs' complaint stated that lack of staff adequately to supervise probationers had resulted in an increase in probation violations and mounting crime in Wayne county and that the violation rate had increased since 1962:

| 1962 | 7.75% | 1965 | 17% |
| 1963 | 7.20% | 1966 | 13% |
| 1964 | 7.30% | 1967 | 27% |

The statistics showed that the total cases supervised had increased from 2604 in 1962 to 3035 in 1967 and to 3281 as of June 30, 1968. Presentence investigations had increased from 1033 in 1962 to 1886 in 1967, with a projection for 1968 of 2500.

In 1962 there were 27 probation officers. This was increased to 30 in 1966.

ant.[6]  It does not require a testimonial record to
establish that as organized today the Wayne circuit
court could not operate efficiently without probation
officers and other supporting personnel in addition
to bailiffs, court clerks and stenographers.

At the hearing the county showed that it is with-
out plenary taxing power, that the legislature has
imposed on it innumerable obligations requiring the
expenditure of funds without providing correspond-
ing revenue, that the county has been operating at
a deficit for years and finds itself in debt to both
the city of Detroit and the State of Michigan for
large sums and that it is financially unable to pro-
vide urgently needed social services.[7]

The county argues that its board of supervisors
is empowered to decide whether the pressing unmet
social service needs of Wayne county shall have
priority over or be subordinated to the concededly
valid need for additional probation officers, law
clerks and a judicial assistant.

---

Based on the 1968 projections, without the additional 11 probation
officers, the average number of supervised cases would be 109.4 per
officer and the presentence investigations would be 6.9 per month per
officer.   The corresponding 1962 figures were 96.44 and 3.3, respec-
tively.   The employment of the additional 11 officers would permit,
based on the 1968 projected case load, a reduction of the average
supervised case load per officer to 80 and of the monthly presentence
investigations to 5.8 per officer.

The average case load per officer recommended by the President's
commission on law enforcement and administration of justice is 35
and the average recommended by the National Council on Crime and
Delinquency is 35 plus 3 presentence investigations per month.

[6] An affidavit of the presiding judge of the Wayne circuit court
attached to the plaintiffs' complaint set out the need for 8 law clerks
and a judicial assistant.   The duties of law clerks and the judicial
assistant are prescribed by RJA §§ 1471, 1481.

[7] Over the objection of the plaintiffs, the defendants were permitted
to offer evidence of other competing needs for the county's funds,
primarily in the field of social services, *e.g.*, for the mentally ill,
dependent children, Wayne county general hospital and the like.   It
was the plaintiffs' position that the amounts which the circuit judges
determined they needed had priority and must be met unless shown
to be unreasonable in amount without regard to these competing
needs and the limitation upon the source of funds available to the
county to meet them.

This confrontation between the Wayne circuit judges and the Wayne board of supervisors follows unsuccessful efforts to reach a compromise whereby the Wayne board of supervisors would appropriate some additional funds for supporting personnel.[8]

---

[8] The plaintiff judges requested that the county make provision in its budget for its fiscal year beginning December 1, 1967 for 7 additional probation officers, 4 law clerks and a judicial assistant.

The defendant board of auditors thereupon recommended the creation of 2 law clerk positions and 2 new positions of probation officer for the circuit court and 5 new positions of probation officer for the recorder's court of the city of Detroit.

The ways and means committee recommended deletion of the probation officers recommended by the board of auditors. The ways and means committee stated that over a period of years the board of supervisors had sought the cooperation of the judges of the circuit and recorder's courts to obtain amendatory legislation eliminating the discrimination against Wayne county resulting from the fact that it is ineligible to receive the service grants provided for in MCLA § 791.225 (Stat Ann 1954 Rev § 28.2295) because of the 500,000 population limitation in MCLA § 791.226 (Stat Ann 1954 Rev § 28-.2296). The committee stated its view "that the county should not continue to fund with local taxpayers' money the complete needs of the probation services of the two courts while the remainder of the courts of the State enjoy substantial assistance from the State. If Wayne county obtained on a proportional basis this aid from the State it would provide substantially increased probation services over and above that which is proposed to be provided by the addition of 7 new positions. The committee believes that as long as the county of Wayne continues to meet the needs of this probation service, neither the State nor the representatives of the two courts will hasten the amendatory change which will give equitable State support to the probation service needs of Wayne county."

An affidavit of the presiding judge of the Wayne circuit court attached to the plaintiffs' complaint states that the plaintiffs are not opposed to legislation which would provide grants to the county of Wayne for their probation service, that this position of the third judicial circuit court was communicated to the chairman of the special legislative subcommittee early in 1967 and to various other members of the board of supervisors and that the position of the judges was, therefore, known to the defendants long before the report of the ways and means committee was issued.

The board of supervisors adopted the recommendation of the ways and means committee and deleted the provision for additional probation officers for the Wayne circuit and recorder's courts. It did make provision for 2 law clerks.

The presiding judge of the Wayne circuit court wrote the chairman of the board of supervisors on November 1, 1967, denying that there was a factual basis for the asserted lack of cooperation in seeking legislative relief and requesting the appointment of a special committee of the board of supervisors to meet with representatives of the court to review the matter.

The plaintiff judges have called our attention to decisions of other State courts asserting the inherent power of the judiciary to require the appropriation of funds when necessary to preserve the functioning of the judicial system.[9]  There are Michigan cases

A special committee was appointed which met on February 29, 1968. The committee agreed that the county's legislative agent should continue to exert every effort to secure the enactment of State legislation which would provide State probation officer services to Wayne county or financial grants to the county to assist in financing probation officer services. The minutes of the meeting state that the committee also "agreed that a further meeting should be held at which circuit court representatives would be present to continue discussion of this problem towards the determination of the sub-committee developing recommendations thereon for the consideration of the ways and means committee."

No further meetings were in fact scheduled for the stated reason that on March 11, 1968 the Wayne circuit court's presiding judge wrote the chairman of the board of supervisors that nothing could be added to what had already been said at numerous meetings with various committees of the board of supervisors. That letter reads, in part, as follows:

"I am not familiar with the procedural aspects which will guide this committee now in reporting to the full board, but I believe I am correct in inferring from what was said February 29th, 1968 that the committee's recommendation to the full board will be unfavorable to the court. I deeply regret that our mutual efforts to resolve these problems have borne so little fruit. I am aware, of course, that the committee adjourned to enable the court to 'demonstrate the need' for the personnel in question, but quite frankly we feel that there is nothing new we can add to what has already been said in the numerous meetings with the several committees of the Board of Supervisors.

"I wish, therefore, at this time to advise you, as chairman of the board, that the judges of the Third Judicial Circuit are making demand of the Board of Supervisors to amend the current budget at their meeting of March 26th, 1968, to provide for:

"(a) Eleven additional probation officers at a minimum salary of $8,736 per year;

"(b) Eight law research clerks at a minimum salary of $8,500;

"(c) One judicial assistant at a salary of $25,000 per year."

This letter was considered at the meeting of the ways and means committee held March 21, 1968; a motion to table the letter was adopted. This lawsuit was commenced April 2, 1968.

9 *Smith* v. *Miller* (1963), 153 Colo 35 (384 P2d 738); *Carlson* v. *State, ex rel. Stodola* (1966), 247 Ind 631 (220 NE2d 532); *Noble County Council* v. *State, ex rel. Fifer*, (1955), 234 Ind 172 (125 NE 2d 709); *Leahey* v. *Farrell* (1949), 362 Pa 52 (66 A2d 577); *Laughlin* v. *Clephane* (DC, 1947), 77 F Supp 103; *Nicholl* v. *Koster* (1910), 157 Cal 416 (108 P 302); *Stevenson* v. *Milwaukee County* (1909), 140 Wis 14 (121 NW 654); *In re Surcharge of County Commissioners* (Common Pleas, 1929), 12 Pa D & C 471; *In re Janitor of Supreme*

which appear to recognize that the judiciary possesses such power.[10]   However, some of the cases

_Court_ (1874), 35 Wis 410; _Dunn_ v. _State, ex rel. Corydon,_ (1933), 204 Ind 390 (184 NE 535); _State, ex rel. Schneider,_ v. _Cunningham_ (1909), 39 Mont 165 (101 P 962); _Millholen_ v. _Riley_ (1930), 211 Cal 29 (293 P 69).

See, also, the following additional cases so holding: _In Re Courtroom and Officers of Fifth Branch Circuit Court, Milwaukee County_ (1912), 148 Wis 109 (134 NW 490); _State, ex rel. Finley,_ v. _Pfeiffer_ (1955), 163 Ohio 149 (126 NE2d 57); _People, ex rel. Conn,_ v. _Randolph, Director of Public Safety_ (1966), 35 Ill 2d 24 (219 NE2d 337).

[10] In _Stowell_ v. _Board of Supervisors for Jackson County_ (1885), 57 Mich 31, the trial judge decided to sequester the jury in a murder case.  The plaintiff, who owned the hotel where the jurors were lodged, presented a bill for the expense of boarding and lodging the jurors and the officers in charge which the board of supervisors refused to pay.  The Supreme Court declared that the trial court had the power to require sequestration of the jurors and that (pp 33, 34) "whoever has power to incur the obligation must necessarily have power to bind to its fulfillment.  There are many things which become incidentally necessary in the support and action of courts which are not specifically provided for by law, and which no one is legally bound to furnish.  Usually these incidental expenditures are made by the sheriff or clerk, and no one questions their correctness.  But the courts cannot be left at the mercy of their officers in such matters.  The practice has always been, and it is necessary, for the court itself to require the procurement of such articles and services. * * * It is within the legislative power to arrange specifically how all these matters should be disposed of; but as the law now stands, the inherent power and duty of courts to exercise their functions must authorize such action as becomes expedient in the course of judicial business. * * *

"Our own decisions have always held that while the supervisors are, under the Constitution, exclusive judges of the propriety of services for the county, yet they have no such exclusive power over those county charges that are not for such services; and we have also held that the expenses of justice are incurred for the benefit of the State, and only charged against the counties in accordance with old usage, as a proper method of distributing the burden.  _People_ v. _Auditors of Wayne County_ (1865), 13 Mich 233.  Also cases in note to _People, ex rel. Kennedy,_ v. _Gies_ (1872), 25 Mich 83 (annotated edition).  Any other rule would put it in the power of a board of supervisors to prevent courts from exercising their proper functions."

In _People, ex rel. Schmittdiel,_ v. _Board of Auditors of Wayne County_ (1865), 13 Mich 233, 237, the Court declared:

"It would be anomalous, to say the least, if the county authorities could control the policy of the state within their limits, by regulating or practically withholding the means of employing needful agencies."

In _Schmittdiel_ the Court held that the provision of Const 1850, art 10, § 10, vesting in Wayne county's board of auditors "exclusive power to prescribe and fix the compensation for all services rendered for, and to adjust all claims against" the county from which there shall be "no appeal" did not empower the board to fix or refuse to pay

concern incidental expenditures, relatively small in amount, or expenditures for items which, customarily, had been paid as a matter of course.[11] In almost all the cases where the inherent power of the judiciary to direct the appropriation of funds was recognized the court also relied on legislation authorizing the expenditure directed by the court.[12]

the salary of the clerk of the Detroit police court which had been established pursuant to PA 1863, No 184 empowering the common council of the city of Detroit to prescribe the clerk's salary which was made payable out of the county treasury.

The just-mentioned constitutional provision does not oust the courts of their general jurisdiction. *Endriss* v. *County of Chippewa* (1880), 43 Mich 317.

That constitutional provision does not entitle the board to reject claims required to be paid by State law. *People, ex rel. Bristow,* v. *Supervisors of Macomb County* (1855), 3 Mich 475; *Board of Supervisors of Arenac County* v. *Board of Supervisors of Iosco County* (1906), 144 Mich 52; *Township of Cedar Creek* v. *Board of Supervisors of Wexford County* (1903), 135 Mich 124, 128.

The corresponding current constitutional provision is Const 1963, art 7, § 9; see, also, the address to the people, 2 Official Record, Constitutional Convention 1961, p 3391, reprinted as annotation in 2 MCLA, p 360 and 1 Stat Ann, p 571.

Also pertinent are the following observations of Michigan's Supreme Court:

"The judiciary is an independent department of the State, deriving none of its judicial powers from either of the other 2 departments. This is true although the legislature may create courts under the provisions of the Constitution. The judicial powers are conferred by the Constitution and not by the act creating the court. The rule is well settled that under our form of government the Constitution confers on the judicial department all the authority necessary to exercise its powers as a co-ordinate branch of the government. It is only in such a manner that the independence of the judiciary can be preserved. The courts cannot be hampered or limited in the discharge of their functions by either of the other 2 branches of government. To remove bailiffs and other court personnel for cause is an inherent power of the judiciary." *Gray* v. *Clerk of Common Pleas Court* (1962), 366 Mich 588, 595.

[11] *Stowell* v. *Jackson County Board of Supervisors, supra; Dunn* v. *State, ex rel. Corydon, supra; In re Janitor of Supreme Court, supra; In re Surcharge of County Commissioners, supra; State, ex rel. Schneider,* v. *Cunningham, supra.*

[12] *Smith* v. *Miller, supra; Carlson* v. *State, supra; Noble County Council* v. *State, ex rel. Fifer, supra; Leahey* v. *Farrell, supra; Laughlin* v. *Clephane, supra; Nicholl* v. *Koster, supra; State, ex rel. Schneider,* v. *Cunningham, supra; In re Courtroom and Officers of Fifth Branch Circuit Court, Milwaukee County, supra; Stevenson* v. *Milwaukee County, supra.*

In *Leahey* v. *Farrell, supra,* the Supreme Court of Pennsylvania declared (pp 58–60):

Similarly, here, while the plaintiff judges rest their case largely on the claimed constitutionally-conferred power, the Michigan State legislature has authorized the very expenditures which the plaintiff circuit judges seek.

It is a sound tradition that courts avoid unnecessary decision of constitutional questions and, thus, if the court perceives a nonconstitutional ground upon which decision can be rested it may decide the case on that ground whether or not urged before it.[13] "[A] court does not grapple with a constitu-

"Where there exists a statute regulating the method of determining the number and fixing the salaries of court employes, is such a statute unconstitutional because of encroachment upon the inherent power of the judiciary? Our answer is in the negative. A court must first comply with reasonable fiscal regulations of the legislature. Should the legislature, or the county salary board, act arbitrarily or capriciously and fail or neglect to provide a sufficient number of court employes or for the payment of adequate salaries to them, whereby the efficient administration of justice is impaired or destroyed, the court possesses the inherent power to supply the deficiency. Should such officials ueglect or refuse to comply with the reasonable requirements of the court they may be required to do so by mandamus. * * *

"In the present case there was no infringement upon judicial powers when the legislature, in the exercise of its power to regulate the fiscal affairs of the commonwealth, set up a salary board and established an orderly method of fixing, inter alia, salaries of court employes. It became the duty of the court to comply first with the statutory provisions and to make known to the board its reasonable requirements. It is only when a board acts arbitrarily or capriciously and refuses or neglects to comply with the reasonably necessary requirements of the court, whereby the administration of justice may be impaired or destroyed, that under the inherent power of the court, orders like that now complained of may be enforced by mandamus. There was no attempt by the court, in this case, to comply first with the statutory provisions."

Similarly, see *Millholen* v. *Riley, supra; The Board of County Commissioners of the County of Washoe* v. *Devine* (1956), 72 Nev 57 (294 P2d 366); *State, ex rel. Hillis,* v. *Sullivan* (1913), 48 Mont 320 (137 P 392); *Merrill* v. *Phelps* (1938), 52 Ariz 526 (84 P2d 74).

*Cf. Rossiter* v. *Middlesex* (1941), 308 Mass 458 (32 NE2d 258); *Daly* v. *McGoldrick* (1939), 280 NY 210 (20 NE2d 545).

13 *Neese* v. *Southern R. Co.* (1955), 350 US 77 (76 S Ct 131, 100 L Ed 60); *Alma Motor Co.* v. *Timken-Detroit Axle Co.* (1946), 329 US 129, 132 (67 S Ct 231, 91 L Ed 128); *Ashwander* v. *Tennessee Valley Authority* (1936), 297 US 288, 346 (56 S Ct 466, 482; 80 L Ed 688, 710) (Brandeis, J., concurring); 16 Am Jur 2d, Consti-

tional issue except as a last resort." *Taylor* v. *Auditor General* (1960), 360 Mich 146, 154. That principle is invoked in this case.[14]

We hold that the trial judge correctly construed RJA §§ 1471, 1481, as authorizing the Wayne circuit judges to hire law clerks and a judicial assistant, to fix their compensation and, if need be, to require the county to appropriate the funds required to pay their compensation.

In our opinion sections 7 and 12, ch 11, of the code of criminal procedure also evidence a legislative purpose to vest in circuit judges, not the board of supervisors, the power to determine the county's needs for probation officers, to cause such supporting personnel to be hired, to fix their compensation and, if need be, to direct the legislative body to appropriate the required funds.

The legislature has conferred on the courts the power to place convicted persons on probation under the supervision of probation officers. MCLA § 771.1 (Stat Ann 1968 Cum Supp § 28.1131). The legislature requires a pre-sentence report prepared by a probation officer to be delivered to the sentencing judge before he sentences a person "charged" with a felony and authorizes a court to

_____

tutional Law, § 113, p 301; *Williams* v. *Civil Service Commission of the City of Detroit* (1968), 15 Mich App 55.

14 As previously discussed, while the portion of the trial court's judgment concerning the additional law clerks and judicial assistant was based on statutory as well as constitutional authority, the portion of the judgment directing the hiring of additional probation officers was predicated solely on the ground that the plaintiff judges possessed inherent constitutional power to direct their hiring.

At the time of oral argument before our Court we suggested to counsel that the construction of RJA §§ 1471 and 1481 adopted by the trial judge, namely, that the legislature conferred upon the Wayne circuit court the power to hire and fix the salaries of law clerks and a judicial assistant and to direct the payment of their salaries, might as well be the correct interpretation of sections 7 and 12 of the code of criminal procedure concerning the appointment of probation officers. *Cf. Perin* v. *Peuler* (On Rehearing, 1964), 373 Mich 531, 534.

direct the preparation of such a report for a person charged with a misdemeanor. Copies of the report are required to be filed with the State department of corrections. Probation officers are required to supervise those placed on probation. MCLA § 771-.14 (Stat Ann 1954 Rev § 28.1144).

We take it that the legislature intended that the pre-sentence reports be prepared expeditiously, yet comprehensively, to the end that a convicted person be sentenced promptly after conviction and the sentencing judge be fully informed regarding the background of the case and of the convicted person. We are also convinced that it was intended that judicial exercise of the probation power not be limited by the number of probation officers available to supervise probationers, and, yet, that there would be adequate supervision of all those placed on probation. The legislature did not intend that its directives or that judicial exercise of the probation power be frustrated by a board of supervisors' failure to provide necessary funds.

Having in mind the financial circumstances of most counties of this State, we do not think the legislature meant to vest in the county boards of supervisors the discretion to determine whether the legislation regarding probation officers, law clerks and a judicial assistant would be implemented.

In a somewhat analogous case, *Sturgis* v. *County of Allegan* (1955), 343 Mich 209, a county superintendent of schools sought to compel payment of his salary. The county's defense was that the superintendent's salary as fixed by the board of education was subject to the approval of the board of supervisors. The relevant statute authorized the board of education to employ a county superintendent of schools and to fix his salary. It was further provided that the portion of his compensation to be

paid from county funds (p 213) "shall be paid by
the county treasurer after the same have been au-
thorized by the county board of education from such
amounts as may be appropriated therefor by the
county board of supervisors."   The Michigan Su-
preme Court held that the statutory right of the
board of education to hire and fix the salary of a
school superintendent could not be frustrated by the
failure of the county board of supervisors to appro-
priate the necessary funds.   The Court directed the
county to pay the school superintendent's salary.

The attorney general in OAG 1958, No 3192, p 41,
construed an act which provided that the county
board of social welfare may employ a director who
"shall receive such compensation as shall be fixed
by the board and approved by the county board or
boards of supervisors."   The opinion of the attorney
general focused on the fact that the statute there
under consideration conferred authority on the
board of supervisors to "approve" the compensation
awarded by the county board of social welfare.   He
ruled, nevertheless, on the authority of *Sturgis:*

"We think the conclusion must be that the county
board of supervisors has no power, by arbitrarily
withholding approval of compensation, to nullify
the statutory right of the county board of social
welfare to select and appoint a director.   *   *   *

"the legislature has placed the responsibility for
selection of a director and for fixing his compensa-
tion upon the welfare board, and the county super-
visors are not empowered to assume, by indirection,
such authority as will nullify the will of the legis-
lature with respect to appointment and fixing of
compensation."

So, too, in this case.   The county board of super-
visors has not been empowered by indirection, by
failing to make necessary appropriations, to thwart

the will of the legislature with respect to the appointment of probation officers, law clerks and a judicial assistant for the Wayne circuit judges.

The Nebraska Supreme Court, faced with a similar issue of statutory construction, ruled that a county cannot nullify a judge's statutory right to appoint a court clerk by failing to approve necessary appropriations to pay the clerk's salary:

"We conclude from the foregoing authorities that the statute authorizes the county judge to fix the salary of the clerk of the county court. In so doing he must not act arbitrarily, capriciously, or unreasonably. The limitation placed upon the authority of the judge in fixing the salary of the clerk of the county court to the effect that it should be done 'with the approval of the county board' authorizes the county board to approve or disapprove the act of the county judge, but in so acting the county board may not act arbitrarily, capriciously, or unreasonably. *In the absence of evidence that the salary fixed by the county judge is unreasonable, capricious, or arbitrary, the county board is without authority to disapprove it.*" *Bass* v. *County of Saline* (1960), 171 Neb 538, 543 (106 NW2d 860, 864) (emphasis supplied); similarly see *State* v. *Rush* (1966), 46 NJ 399, 414 (217 A2d 441, 449); *People, ex rel. Conn,* v. *Randolph, Director of Public Safety* (1966), 35 Ill 2d 24, 30 (219 NE2d 337, 341); *Powers* v. *Isley* (1947), 66 Ariz 94, 104 (183 P2d 880, 888).

We think that before the county should be heard to interpose financial inability to provide the required funds it must demonstrate not only that there is a shortage of funds but also that such shortage is attributable to obligations having the same rank and priority in terms of legislative mandate upon the board of supervisors as do appropriations for probation officers, law clerks and a judicial

assistant.   For all that appears on this record the county's financial embarrassment may be attributable to the incurment of liabilities and the making of expenditures of a discretionary nature and not because of expenditures required by the legislature. Until it is made to appear that the county's financial embarrassment cannot be alleviated by the elimination of discretionary expenditures, there is no need to consider the contentions of the parties as to whether the county is in fact short of funds[15] and how, if the kind of shortage referred to in opinions of the attorney general[16] were shown to exist, the financial resources of the county would be apportioned.

The problem of providing adequate funds for the support of necessary judicial services is primarily the function of the State legislature. *Cf. People, ex rel. Conn,* v. *Randolph, Director of Public Safety,*

---

[15] The trial judge found that the county had adequate funds to meet the demands of the plaintiff circuit judges. The county contends that this finding was based on a misunderstanding of testimony of a former chairman of the board of supervisors and, for that reason, it was erroneous.

[16] An opinion of Mr. Justice KAVANAGH as attorney general (OAG 1957, No 2029-A, p 28) noted that in *Sturgis* no issue had been raised as to the reasonableness of the compensation provided in the superintendent's contract. He ruled that the board of county supervisors has some discretion with respect to appropriations for the county board of education and that the orbit of that discretion was restricted to matters within its legislative concern and responsibility, such as: "(a)—adjustment of grossly extravagant or unnecessary expenditures; or (b)—protection of the county against incurring obligations which are beyond the legal financial resources of the county to discharge."

An opinion of Mr. Justice ADAMS as attorney general (OAG 1958, No 3192, pp 41, 42) likewise states:

"It is, however, the province of the county board of supervisors to take cognizance of the reasonableness of such compensation, and to exercise its power and duty to see that the financial resources of the county are not overtaxed or its total budget overdrawn by reason of the size of the amount fixed for compensation of the director by the county board of social welfare."

*Cf. Municipal Finance Commission* v. *Marquette Township School District Board of Education* (1953), 337 Mich 639, 644; *Walker* v. *Common Council of City of Detroit* (1932), 259 Mich 480, 488.

*supra,* p 32. The judges and the county have made a plea for State funds to alleviate the burden on Wayne county of meeting these additional expenditures for judicial purposes. Further legislative attention to the matter may result in consideration of Wayne county's claim that the statute which provides for supplemental service grants to meet the probation officer needs of only the less populous counties[17] unfairly discriminates against Wayne and the other more populous counties.

We have not addressed ourselves to the question of the reasonableness of the requests of the plaintiff circuit judges, *i.e.,* whether they need 11 additional probation officers, 8 law clerks and a judicial assistant and whether the amounts fixed as salaries for those positions are appropriate. The spectrum of reasonableness is broad and opinions regarding reasonableness will vary throughout the spectrum. It would not be appropriate for a panel of this Court to second-guess what is essentially an administrative judgment of the judges of the Wayne circuit court. It is our understanding that our Court has not been vested with superintending control over the general practices of the trial courts—that the power to exercise that kind of superintending control has been reserved by the Supreme Court exclusively to itself. *Cf. Morcom* v. *Recorders Court Judges* (1968), 15 Mich App 358. See Const 1963, art 6, § 4; MCLA § 600.219 (Stat Ann 1962 Rev § 27A.219). Accordingly, we do not comment and express no opinion on

---

[17] Section 25, PA 1953, No 232 (MCLA § 791.225 [Stat Ann 1954 Rev § 28.2295]) authorizes the corrections commission to make service grants available to a county where it appears to the commission that otherwise the county will not be able "to adequately maintain its probation program according to the standards set by the State bureau of probation." However, this provision for service grants does not apply to probation departments in counties of over 500,000 population. MCLA § 791.226 (Stat Ann 1954 Rev § 28.2296).

the reasonableness of the action of the Wayne circuit judges.[18]

The county asserts that it was deprived of due process of law guaranteed by the Fourteenth Amendment and Const 1963, art 1, § 17, when, over its objection, this case was tried to a circuit judge, albeit one other than of the Wayne circuit court, who was designated by the Michigan Supreme Court administrator to hear this case as a visiting judge.[19] It is the county's contention that no circuit judge could be impartial since the presented issue concerned the power of all Michigan circuit judges and, thus, all circuit judges at one time or another have been or may well be faced with a need for additional funds for judicial purposes which their county boards of supervisors are unwilling to provide.

We note that our decision is not predicated upon any factual determination made by the trial judge. We do not think that the resolution of the legal issues presented by this case has been prejudiced by the fact that they were first considered by a circuit judge just because that judge may wish to join with his colleagues some day in exercising the power claimed by the Wayne circuit judges. The county's argument would make ineligible all Michigan judges because the judges of our Court and the justices of the Michigan Supreme Court may some day be obliged to assert and exercise the inherent power of an independent branch of government. Adjudication

---

[18] "The superintending control conferred by the Constitution on this Court is a power separate, independent and distinct from its other original jurisdiction and appellate powers, its purpose being 'to keep the courts themselves "within bounds" and to insure the harmonious working of our judicial system.' [citations omitted] Such power having been conferred by Constitution upon this Court, it also received all the power necessary to make that control and its implementing orders and writs effective." *In re Huff* (1958), 352 Mich 402, 418. See, also, *Ransford* v. *Graham* (1964), 374 Mich 104, 108.

[19] See MCLA § 600.558 (Stat Ann 1962 Rev § 27A.558).

of a case regarding the breadth of judicial power cannot be avoided because all judges are in a sense affected by the manner in which the issue is resolved.[20]

In summary, we hold that (1) RJA §§ 1471 and 1481 and sections 7 and 12, ch 11, of the code of criminal procedure evidence a legislative purpose to vest in circuit judges the power to determine the extent to which probation officers, law clerks and a judicial assistant shall be hired, to fix the compensation of those hired and, if need be, to direct local units of government to pay the amounts so determined and (2) the issue of the propriety of the action taken by the Wayne circuit judges in this case was not reviewable by the trial judge or by us but is subject to review by the Michigan Supreme Court in the exercise of its power of general superintending control over the actions of all judges and courts inferior to the Supreme Court.

Affirmed. No costs, a public question.

J. H. GILLIS, P. J., and FITZGERALD, J., concurred.

---

[20] Cf. *Evans* v. *Gore* (1920), 253 US 245, 247, 248 (40 S Ct 550, 64 L Ed 887, 11 ALR 519); *Taylor* v. *Auditor General* (1960), 360 Mich 146, 152, 153; *Bliss* v. *Caille Brothers Co.* (1907), 149 Mich 601, 609.