Argued April 20, order vacated with instructions to dismiss
October 4, petition for rehearing denied November 3, 1971,
petition for review allowed January 11, 1972

NORMAN ET AL, *Respondents, v.*
VAN ELSBERG ET AL, *Appellants.*
489 P2d 394

*Peter S. Herman,* Senior Counsel, Salem, argued the cause for appellants. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

*John Foss,* Coos Bay, argued the cause for respondents. With him on the brief were Paul L. Roess and McKeown, Newhouse & Johansen, Coos Bay.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

FORT, J.

The parties seek a determination whether under ORS 419.604 the board of county commissioners of Coos County act solely in a ministerial capacity concerning the setting of salaries of juvenile department personnel and thus are required to accept the salaries designated therefor by the judges of the juvenile court. The trial court so concluded, and the defendants appeal.

Plaintiffs are the circuit judges having jurisdiction of the judicial district of which Coos County is a part. Defendants comprise all of the members of the board of county commissioners of Coos County. All parties appear in their official capacities.

The matter comes before us denominated as a "Controversy Submitted Without Action or Suit," filed under the provisions of ORS 27.010 to 27.030. These provide as follows:

ORS 27.010:

"Parties to a question in controversy, which might be the subject of an action or suit in a court of record with such parties plaintiffs and defendants, may submit the question to the determination

of such court without action or suit, as provided in ORS 27.020 and 27.030."

ORS 27.020:

"The parties as plaintiff and defendant shall state, in writing, a case containing the facts upon which the controversy depends * * *."

ORS 27.030:

"The statement shall be filed with the clerk, and from the date of filing the court shall have jurisdiction of the controversy as if it was an action pending after a special verdict found, and shall proceed to hear and determine the controversy accordingly."

ORS 17.405 states:

"* * * A special verdict is that by which the jury find the facts only, leaving the judgment to the court."

The court in which the statement of facts is filed thus is directed to treat it as though it were a finding of facts made by a jury.

In *City of Cascade Locks v. Carlson,* 161 Or 557, 90 P2d 787 (1939), the court said:

"Before discussing the points raised on this appeal, attention is directed to the fact that § 2-1301 [now ORS 27.010], *supra,* provides for submitting a controversy 'which might be the subject of an action at law in a court of record', without action, by following the procedure outlined in the next two sections of the code. Those sections were part of the original code of civil procedure enacted in 1862, long prior to the enactment of the declaratory judgment act, chapter 300, Laws 1927. The 'decree' from which both the plaintiff and the defendant herein have appealed is more in the nature of a judgment or decree under the declaratory judgment statute

than a judgment such as contemplated by the provisions for submitting a controversy without action.

"Proceedings in mandamus are generally regarded as in the nature of an action at law: *Nelson v. Baker,* 112 Or 79, 94, 227 P. 301, 228 P. 916. We shall assume, without deciding whether or not the procedure adopted was within the contemplation of §§ 2-1301 to 2-1303, inclusive, *supra,* that the question of whether a peremptory writ of mandamus should be issued by the circuit court was properly presented to that court and is now before us for final determination." 161 Or at 561-62.

Neither party has raised the question of the jurisdiction of this court to decide the question presented in a proceeding under this statute, as distinguished from a declaratory judgment, mandamus or other proceeding. Accordingly, we, too, shall assume without deciding that the questions propounded are properly before us.

The controversy arises out of the following statute:

ORS 419.604 (1):

"Subject to subsection (2) of this section, *the judge or judges of the juvenile court* in any county having a population less than 300,000 *shall appoint* or designate one or more persons of good moral character as *counselors* of the juvenile department of the county, *to serve* at the pleasure of and *at a salary designated by the appointing judge and approved by the budget-making body of the county."* (Emphasis supplied.)

We learn from the statement of facts that:

1) Pursuant to that statute the juvenile court judges designated the salaries of the department staff;

2) A copy of the salary schedule was submitted by the judges to the Coos County budget committee;

3) The budget committee thereafter approved a salary schedule different from that submitted by the judges;

4) The budget approved by the budget committee was duly adopted by the board of county commissioners.

Thereafter the juvenile court judges on their own motion entered the following ex parte order:

"It appearing to the Court that salaries being paid employees of the Coos County Juvenile Department are not in the amounts determined by the Court and there having been no showing that the Court's determination in these matters was arbitrary or capricious,

"IT IS HEREBY ORDERED that Coos County pay from county funds salaries to Juvenile Department employees in accordance with the following schedule retroactive to July 1, 1969 and continuing until otherwise ordered by this Court:

"* * * * *

"IT IS FURTHER ORDERED that adjustments be made by payment to Juvenile Department personnel of the difference between the sums actually paid and the payments required by this order, the payment of such difference to be made within ten (10) days of the date of this order, and

"IT IS FURTHER ORDERED that any wilful failure or refusal to execute this order or any interference with the execution of this order will be treated as a contempt of this Court pursuant to ORS 33.010 through 33.150.

"* * * * *"

The commissioners did not comply with this order. No contempt, mandamus or other proceeding was instituted. Instead, the pending statement of controversy was filed.

The statement of facts also includes the following:

## "XII

"It is further agreed that the County Commissioners do not claim or assert that the salary schedule for the employees of the Juvenile Department as set forth in Exhibits "A" and "H" are arbitrary or unreasonable.

"It is further agreed that the Circuit Court Judges do not claim or assert that the salary schedule for the employees of the Juvenile Department as set forth in Exhibit 'D' is arbitrary or unreasonable."

The plaintiffs contend that the function of the defendants under ORS 419.604 (1) is purely ministerial. The defendants contend it imposes a duty on the county budget committee which is more than ministerial and requires an exercise of discretion by it.

The defendants contend that the imposition of a tax is a legislative function (Oregon Constitution, Art I, § 32; Art IV, § 17; Art IX, §§ 1 and 3), that a county under Oregon Constitution, Art XI, § 11, is constitutionally authorized to exercise this power when delegated to it by the legislature, and thus under the doctrine of the separation of powers (Oregon Constitution, Art III, § 1),[①] this power is required to be exercised by it.

---

[①] Oregon Constitution, Art III, § 1:

"The powers of the Government shall be divided into three seperate (sic) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

For a discussion of legislative branch v. judicial branch problems, see: Vanderbilt, "The Doctrine of the Separation of Powers and its Present-Day Significance," at 98-107 (Univ. of Neb. Press 1953).

Plaintiffs, on the other hand, contend, also under the doctrine of the separation of powers, that courts have an inherent power to require that funds necessary for the discharge of the functions constitutionally imposed upon the court be made available to them by the legislative arm of government.

We note that a third problem arises under Oregon Constitution, Art III, § 1. Under what circumstances, if any, does the legislative arm of government have the authority to delegate to the judicial branch duties which are primarily administrative in nature and thus within the sphere of the executive branch? Since, however, neither party has raised or briefed this difficult question, we do not decide it.[2]

ORS 419.604 (1) was enacted in 1955, Oregon Laws ch 491, p 573, and evolved from Senate Bill 404. As originally introduced, the words "and approved by the budget-making body of the county" were not contained. This language was added by the Senate Committee on Local Government to which the bill was referred. If the intention of the legislature was that the function of the county budget committee be only ministerial, there would have been no reason to have added that language.

■ It is axiomatic that statutes are to be construed so as to carry out the declared legislative purpose. *Didier v. S.I.A.C.*, 243 Or 460, 465, 414 P2d 325 (1966).

---

[2] Specifically, as here, can the administration of a juvenile department constitutionally be delegated by the legislative branch to the judicial rather than the executive branch? See, *In Re Gault —Its Impact in Oregon*, 5 Will L J 1, 25-26 (1968). If it can it may, by analogy, be reasonably asked, could the judicial branch, since only it can deprive a mental patient of his liberty, constitutionally be required or authorized by legislation to administer state or local mental health departments or facilities—or even, perhaps, state or local adult correctional facilities and agencies?

Here the statute, while authorizing the juvenile court judge to "designate" the salary, then directs that the salary must also be "approved by the budget-making body of the county."

Furthermore, Section 6 of the 1955 Act (now ORS 419.616 (1)) included the provision:

"* * * [A]ll salaries for the personnel of a juvenile department and of any detention facilities maintained in the county, shall be payable upon the order of the board of county commissioners or county court of the county from county funds budgeted and levied for that purpose in any manner provided by law. * * *"

In considering the legislative intention it is helpful to examine other statutes dealing with closely related subject matter. *Taggart v. School District No. 1*, 96 Or 422, 188 P 908, 188 P 1119 (1920) ; *Watts v. Gerking*, 111 Or 641, 658, 222 P 318, 228 P 135, 34 ALR 1489 (1924). Two other statutes vesting in the circuit court authority over personnel performing closely analogous functions are instructive.

ORS 107.430, originally enacted as Oregon Laws 1959, ch 534, p 940, authorizes the circuit court to employ personnel to make investigations in child custody matters. Subsection (3) thereof provides:

"The court having jurisdiction of cases described in subsection (1) of this section may hire and fix the salaries of such professional and clerical personnel as are necessary to carry out the purposes of this section. The salaries of the professional and clerical assistants shall be paid in the same manner as the salaries of county officers are paid."

It would appear the legislature did not intend the fixing of those salaries to be subject to the approval of the county budget committee.

ORS 107.530 was enacted as Section 3 of Oregon Laws 1963, ch 434, p 668. It created conciliation jurisdiction in the circuit court (ORS 107.520), authorized it to offer services (ORS 107.510 (2)), and the court itself to employ personnel therefor (ORS 107.530 (1)). After so authorizing, ORS 107.530 (2) provides:

> "*Subject to the provisions of the Local Budget Law,* the compensation and expenses of personnel performing conciliation services for the circuit court or courts and other expenses of providing conciliation services may be paid by the county or as may be agreed upon between the counties involved." (Emphasis supplied.)

It is apparent that the legislature there intended that the county government should have its usual budgetary authority.

■ We conclude that the legislature did not intend that the giving of the approval of the budget committee required by ORS 419.604 (1) was to be a purely ministerial act.

The trial court based its conclusion to the contrary not on the language of the statute but on the ground that the judicial branch has inherent power to require the legislature to furnish the funds required for its operation. Here, however, the circuit judges have stipulated that the salaries set by the county are neither "arbitrary or unreasonable," nor does the statement of facts assert that the scale set by the commissioners will impair the ability of the juvenile court to discharge its duties.

The nature and extent of such inherent power has been the subject of an ever-increasing number of

cases.⑨ Within just the past two years the precise problem involved in this case has been considered by the Supreme Court of at least four states, and by others prior thereto. Two of these were decided after the decree below and two a few months before. *Wayne Circuit Judges v. Wayne Cty.*, 383 Mich 10, 172 NW2d 436 (1969); *Birdsall v. Pima County*, 106 Ariz 266, 475 P2d 250 (1970); *State ex rel. Weinstein v. St. Louis County*, 451 SW2d 99 (Mo 1970); *Com. ex rel Carroll v. Tate*, 442 Pa 45, 274 A2d 193 (1971). These four decisions will suffice to reflect differing approaches to the problem.

*State ex rel. Weinstein v. St. Louis County*, supra, was an original proceeding in the nature of *quo warranto* to oust the county governing body from usurping the duties imposed by statute on the juvenile court to set the compensation, determine the number and select the employes of the juvenile court. The Supreme Court in a unanimous decision said:

> "These questions involve the fundamental nature and function of the judicial department of government and of the powers which it possesses to carry out such function. * * *
> "* * * * *
> "We are of the opinion that within the inherent power of the Juvenile Court of St. Louis County * * * is the authority to select and appoint employees reasonably necessary * * * and to fix their compensation. * * *" 451 SW2d 101, 102.

In so holding, the court relied on an Indiana case, *Noble Co. Council v. State ex rel Fifer*, 234 Ind 172, 125 NE2d 709 (1955).

---

⑨ For an exhaustive listing of cases, see: Carrigan, "Inherent Powers of the Courts" (1970), published by the National College of State Trial Judges, Reno, Nevada.

In *Birdsall v. Pima County,* supra, the Arizona Supreme Court considered a statute very similar to ours. It provided:

" 'The salary of the chief probation officer of the juvenile court in each county, his deputies, assistants and all other employees, shall be fixed by the judge presiding in the juvenile court, *with the approval of the board of supervisors,* and shall be a county charge.' (Emphasis added)." (2 A.R.S. § 8-205.) 106 Ariz at 268, 475 P2d at 252.

The court said:

"\* \* \* We hold that under § 8-205 the respondent Board had a ministerial duty to approve petitioner's order fixing new salaries for the employees of the Juvenile Court in the absence of a clear showing that petitioner acted unreasonably, arbitrarily and capriciously in fixing the salaries. \* \* \*" 106 Ariz at 268, 475 P2d at 252.

The Arizona court relied on *Smith v. Miller,* 153 Colo 35, 384 P2d 738 (1963), holding to like effect under a similar statute.

■ *Wayne Circuit Judges v. Wayne Cty.,* supra, involved the validity of an order of the circuit judges providing for (1) law clerks, (2) a judicial assistant, and (3) additional probation officers. It presented no issue as to the amount of salary payable. The Court of Appeals in *Wayne Circuit Judges v. Wayne Co.,* 15 Mich App 713, 167 NW2d 337 (1969), had concluded that under appropriate circumstances the circuit judges had inherent power to so order. It declined, however, to consider whether such power was, as to any of the stated matters, exercised appropriately by the circuit judges on the ground that supervisory authority over the courts of that state was vested exclusively in the Supreme Court, and that it would thus be im-

proper for the Court of Appeals to decide whether the conclusion of the circuit judges concerning the stated needs was reasonable. That court said:

"We have not addressed ourselves to the question of the reasonableness of the requests of the plaintiff circuit judges, *i.e.*, whether they need 11 additional probation officers, 8 law clerks and a judicial assistant and whether the amounts fixed as salaries for those positions are appropriate. The spectrum of reasonableness is broad and opinions regarding reasonableness will vary throughout the spectrum. It would not be appropriate for a panel of this Court to second-guess what is essentially an administrative judgment of the judges of the Wayne circuit court. It is our understanding that our Court has not been vested with superintending control over the general practices of the trial courts—that the power to exercise that kind of superintending control has been reserved by the Supreme Court exclusively to itself. *Cf. Morcom v. Recorders Court Judges* (1968), 15 Mich App 358. See Const 1963, art 6, § 4; MCLA § 600.219 (Stat Ann 1962 Rev § 27A.219). Accordingly, we do not comment and express no opinion on the reasonableness of the action of the Wayne circuit judges." 15 Mich App at 730-31, 167 NW2d at 347-48.

We conclude that under ORS 1.002 and 1.006, only the Supreme Court may exercise general administrative authority and supervision over the courts of Oregon.[4]

⸻

[4] ORS 1.002 provides:

"The Supreme Court has general administrative authority and supervision over the courts of the state. The Supreme Court may make rules and orders necessary or appropriate to the exercise of its administrative authority and supervision, but this section does not authorize the Supreme Court to make rules of civil or criminal procedure. The Chief Justice of the Supreme Court shall exercise such administrative authority and supervision in accordance with such rules and orders."

ORS 1.006 sets forth the responsibilities of the Chief Justice thereunder.

On appeal, the Michigan Supreme Court said:

"Under appropriate factual circumstances, a circuit court may exercise its inherent power for the purpose of employing a law clerk or law clerks. * * *

"* * * * *

"* * * There is no doubt that in some circumstances a court should exercise inherent power to appoint a probation officer. * * *" 383 Mich at 24, 25, 172 NW2d at 441, 442.

It declined, however, to approve the order of the circuit judges as to either matter, saying as to the law clerks:

"* * * We are not persuaded that the judges of the third circuit have demonstrated the practical necessity of employing law clerks at this time. And accordingly, we will direct them to withdraw their request for such clerks, reserving the administrative jurisdiction to redetermine the necessity at a later date." 383 Mich at 24, 172 NW2d at 441,

and as to the probation officers:

"* * * [W]e are not prepared to say that a court should exercise inherent power to take direct contractual action to augment the probation staff for the purpose of assuring a more adequate and effective ratio of supervisory officers to probationers.

"The interest of the judiciary in the rehabilitative process is keen but not paramount. Corrections, pardons, and paroles are historically the primary responsibility of the executive branch of government. And while such things are appropriately within the purview of a broad concept of the needs of justice, they are not normally a part of the narrower notion of practical necessities of effectively continuing court functioning. The exigencies of a particular case may indeed dictate the appointment of a particular person to supervise a

particular defendant. In such case, the inherent power of the court to act directly may be called into play. But this is quite a different thing than the policy decision implicit in the establishment of supervisory ratios." 383 Mich at 26, 172 NW2d at 442.

It did, however, approve the employing of a judicial assistant, saying:

"The question of the exercise of the inherent power of the judges of the third circuit to employ a judicial assistant is before us on this record. The court did in fact employ a judicial assistant, and fixed his salary at $25,000 per year. Irrespective of the statute on the subject (MCLA 600.1481 [Stat Ann 1962 Rev § 27A.1481]), we find that a judicial assistant of the type contemplated by the statute is a practical necessity for the effectively continuing operation of a metropolitan circuit court consisting of 27 judges, such as the third circuit." 383 Mich at 25, 172 NW2d at 441-42.

The court also pointed out:

"The inherent power of the judiciary is a judicial power, but only in the sense that it is a natural necessary concomitant to the judicial power.

"The inherent power of the Court is non-adjudicatory. It does not deal with justiciable matters. It relates to the administration of the business of the Court.

"* * * * *

"A judge by presuming to act contractually in the exercise of inherent powers does not adjudicate anything. He acts administratively. Tested judicially, his action may be *ultra vires* if factually it should appear that the expense incurred was not practically necessary to the effectively continuing operation of the court.

"* * * * *

"* * * The authority of a judge to bind the county or the state is never broader than the necessity which prompts its exercise. Actual authority, not apparent authority, is the criterion. Actual necessity must be alleged and shown by the claimant. * * *" 383 Mich at 21, 23, 24, 172 NW2d at 440, 441.

■ We agree and hold that in setting the challenged salaries the circuit judges were here acting in the discharge of an administrative function and not in the usual judicial role of adjudicating a controversy.

The most recent case which we have found is *Com. ex rel Carroll v. Tate,* supra. While it dealt with the entire court budget, a significant part involved salaries of both juvenile and adult probation officers.

The court defined the issues in that mandamus proceeding:

"* * * [W]e deem it important to focus on the fundamental questions involved: (1) whether the Judicial Branch of our Government has the inherent power to *determine* what funds are *reasonably necessary* for its efficient and effective operation; and (2) if the Judiciary has the power to determine what funds are reasonably necessary, does it then have the power to *compel* the Executive and Legislative Branches to provide such funds after the requested amount has been reduced in, or wholly or partially eliminated from, the budget proposed by the Executive Branch and approved by the Legislative Branch." (Emphasis in original.) 442 Pa at 47, 274 A2d at 194.

In discussing the issues, it said:

"Expressed in other words, the Judiciary *must possess* the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated

responsibilities, and its powers and duties to administer Justice, if it is to be in reality a co-equal, independent Branch of our Government. This principle has long been recognized, not only in this Commonwealth but also throughout our Nation. * * * [Citations omitted.]" (Emphasis in original.) 442 Pa at 52, 274 A2d at 197.

The court also held:

"The Court [of Common Pleas] does not have *unlimited* power to obtain from the City whatever sums it would like or believes it needs for its proper functioning or adequate administration. *Its wants and needs must be proved by it to be 'reasonably necessary' for its proper functioning and administration, and this is always subject to Court review."* (Second emphasis supplied.) 442 Pa at 57, 274 A2d at 199.

■ The responsibility for the provision of funds[5] and the power to levy taxes rests exclusively upon the legislative branch of government.[6]

Oregon Constitution, Art XI, § 11, authorizes the legislature to delegate certain of its taxing and fiscal authority to the counties. The Local Budget Law, ORS 294.305 to 294.520, provides authority and procedure for its exercise.

In *Leahey v. Farrell,* 362 Pa 52, 66 A2d 577 (1949), the Supreme Court said:

"In the present case there was no infringement upon judicial powers when the legislature, in its exercise of its power to regulate the fiscal affairs

---

[5] Oregon Constitution, Art IX, § 2, provides:

"The Legislative Assembly shall provide for raising revenue sufficiently to defray the expenses of the State for each fiscal year, and also a sufficient sum to pay the interest on the State debt, if there be any."

[6] Oregon Constitution, Art IX, §§ 1, 3; Art IV, § 1.

of the Commonwealth, set up a salary board and established an orderly method of fixing, inter alia, salaries of court employes. \* \* \* It is only when a board acts arbitrarily or capriciously and refuses or neglects to comply with the reasonably necessary requirements of the court, whereby the administration of justice may be impaired or destroyed, that under the inherent power of the court, orders like that now complained of may be enforced by mandamus. \* \* \*" 362 Pa at 59-60, 66 A2d at 580.

In *Com. ex rel Carroll v. Tate,* supra, the court said:

"*Leahey* correctly holds (by necessary implication) that the burden is on the Court to establish that the money it requests is reasonably necessary for 'the efficient administration of justice.' \* \* \*" 442 Pa at 55, 274 A2d at 199.

■ We conclude that under ORS 419.604 the judges in the event of disagreement with the board of county commissioners must establish in an appropriate court proceeding the court's requirements as set forth in its requested budget are reasonably necessary to enable the effective discharge of its required functions. Their administrative determination thus remains subject to review in a judicial proceeding. We need not here decide the standards and considerations which must guide such a decision.

■ Here the board of county commissioners designated the salaries for each of the juvenile department employes as it was required to do under ORS 419.604 (1). The act of the judges in designating a salary scale and submitting it to the county governing board was administrative only. It was not a finding pursuant to a judicial proceeding.

The statement of controversy establishes here that the amount set by the board of commissioners was

neither arbitrary nor unreasonable. There is nothing in the statement of controversy from which it can be concluded that the salaries set by the board adversely affected the discharge of the functions imposed by the constitution upon the judicial branch, or those imposed by the legislature upon the Circuit Court of Coos County under ORS 419.604 and 419.608.

It follows, then, not as a matter of administrative supervision, but as a matter of law, that the salary schedule, as approved by the budget committee and established by the commissioners, remains the lawful one.

The order entered below is set aside with instructions to dismiss this matter.

SCHWAB, C. J., Specially Concurring.

I concur in that portion of the majority opinion which construes ORS 419.604 (1) as vesting the final decision on salaries of juvenile department counselors in the budget-making body of the county and for that reason concur in the result reached by the majority.