WAYNE CIRCUIT JUDGES *v.* WAYNE COUNTY.

OPINION OF THE COURT.

1. MANDAMUS — COUNTIES — APPROPRIATIONS — SALARIES — COURT PERSONNEL.

Mandamus issued by circuit court compelling a county, its board of supervisors, its board of auditors, and its treasurer to appropriate money for salaries of additional probation officers, law clerks, and a judicial assistant will not be affirmed by the Supreme Court.

2. DECLARATORY JUDGMENT—JURISDICTION—COURTS—JUSTICE.

Jurisdiction to act upon a petition for a declaration of rights rests in the Supreme Court where it is in the interest of administration of justice (GCR 1963, 865.1[7]).

3. CONSTITUTIONAL LAW—SEPARATION OF POWERS—JUDICIAL POWER —COURTS.

The three powers of government are separated in this state by constitutional mandate, with the judicial power, the power to decide cases between contending parties and to determine legal rights in other cases where permitted by law, being vested in one court of justice (Const 1963, art 3, §§ 2, 8; art 6, § 1).

4. CONSTITUTIONAL LAW—SEPARATION OF POWERS—INHERENT POWER —ADMINISTRATIVE AUTHORITY.

Exercise of power by one of the three branches of government necessarily includes some ancillary inherent capacity to do

REFERENCES FOR POINTS IN HEADNOTES

[1, 29] 34 Am Jur, Mandamus § 122 *et seq.*
[2] 22 Am Jur 2d, Declaratory Judgments § 9 *et seq.*
[3, 4, 35–44] 16 Am Jur 2d, Constitutional Law § 210 *et seq.*
[5] 20 Am Jur 2d, Courts §§ 78–81.
[6, 7, 30, 31, 33, 34] 20 Am Jur 2d, Courts § 111 *et seq.*
[8–12, 14, 19–21, 24, 25] 16 Am Jur 2d, Constitutional Law § 219 *et seq.*
[13, 22, 23, 32] 51 Am Jur, Taxation § 399.
[15–18] 20 Am Jur 2d, Courts § 102.
[26–28] 50 Am Jur, Statutes § 8 *et seq.*
[45] 5 Am Jur 2d, Appeal and Error § 1009.

things normally done by other departments; thus, the judicial department has an inherent measure of administrative authority like that primarily vested in the executive department to accomplish housekeeping chores which are prerequisite to exercise of the judicial power.

5. COURTS—JUDICIARY—INHERENT POWER—ADMINISTRATIVE AUTHORITY—JUSTICIABLE MATTERS.

The inherent power of the judiciary is a non-adjudicatory power relating to the administration of the business of the court and does not deal with justiciable matters.

6. CONSTITUTIONAL LAW—COURTS—INHERENT POWER—ADMINISTRATIVE AUTHORITY.

The Supreme Court has the constitutional duty to superintend the administration of justice throughout the state and therefore the inherent power to do so.

7. COURTS—INHERENT POWER—ADMINISTRATIVE AUTHORITY.

In discharge of the constitutional duty to superintend the administration of justice, it is proper for courts to assess and define the needs of the judiciary and administration of justice on a local level and for the Supreme Court to prepare and submit a judicial budget and support it before the other two branches of government the physical, organizational, and other measures which are deemed expedient and needful for efficient administration of justice.

8. COURTS—ADMINISTRATIVE AUTHORITY—FISCAL AUTHORITY.

The power of the Supreme Court to assess and declare the needs of administering justice does not usurp the fiscal authority of the legislative department.

9. CONSTITUTIONAL LAW—JUDICIARY—EXPENSES—TAXES.

The judiciary was established by the constitution as an independent co-equal branch of government and its operation is one of the proper expenses for which taxes must be levied and with which executive fiscal policies may not interfere (Const 1963, art 9, § 1; art 5, § 20).

10. COURTS—INHERENT POWERS—EXPENSES—NECESSITY.

Courts have inherent power to bind the state or county contractually for a particular item of expense which is necessary to the effectively continuing functioning of the court, that is, an item which is a practical necessity.

11. Courts—Inherent Power—Administrative Authority—Contracts—Practical Necessity.

A judge acting contractually in exercising the court's inherent power does not adjudicate anything but acts administratively, and his action may be tested judicially and be found to be *ultra vires* if it factually appears that the expense incurred was not practically necessary to the continuing operation of the court.

12. Constitutional Law—Statutes—Contracts—State Government—Expenses—Appropriations.

The constitution and laws of this state demonstrate that a state can be bound beyond existing appropriations for expenses arising from contracts as well as from torts (Const 1963, art 9, § 22; PA 1961, No 236).

13. Counties—Courts—Expenses—State Government.

The county is the proper arm of the state government upon which the necessary expense of operating the circuit court devolves.

14. Judges—Inherent Power—Actual Authority.

A circuit judge has actual authority, not apparent authority, to act contractually and bind the county for actual necessities, and the actuality of the necessity must be shown by one claiming on such a contract.

15. Courts—Inherent Power—Law Clerks.

Inherent power of the circuit court may be exercised in appropriate factual circumstances for the purpose of employing law clerks in a judicial circuit.

16. Courts—Law Clerks—Practical Necessity—Record.

Record before the Supreme Court *held,* not to show practical necessity for additional law clerks for the third judicial circuit.

17. Courts — Law Clerks — Request — Withdrawal — Continuing Jurisdiction.

Request by the third judicial circuit for additional law clerks is directed to be withdrawn where the record was not persuasive that the requesting circuit had demonstrated a current practical necessity of employing additional law clerks, with the Supreme Court reserving administrative jurisdiction to determine necessity later (Const 1963, art 6, § 4).

18. COURTS—COURT PERSONNEL—JUDICIAL ASSISTANT—STATUTES—PRACTICAL NECESSITY—CLAIM FOR SERVICES.

> A judicial assistant of the type contemplated by statute is a practical necessity for the effectively continuing operation of a metropolitan circuit court consisting of 27 judges, and where upon exercise of the circuit court's inherent power a judicial assistant was employed in a metropolitan judicial circuit consisting of 27 judges, but the county did not appropriate funds for the judicial assistant's salary, the assistant may submit a claim for services in that judicial circuit (MCLA 600.1481).

19. COURTS — PROBATION OFFICER — REPORTS — SENTENCE — CONTRACTUAL ACTION.

> A circuit judge may take direct contractual action where necessary to the performance of his judicial duties as where the absence of a probation officer to furnish the statutorily required report before sentence in certain criminal cases would interfere with the court's proceeding to sentence (MCLA 771.14).

20. COURTS—PROBATION OFFICERS—PRACTICAL NECESSITY—SUPERVISION RATIO.

> A more adequate and effective ratio of probation officers to probationers they supervise is primarily the responsibility of the executive branch and is not normally one of the practical necessities of effectively continuing court functioning; hence, a court should not ordinarily exercise its inherent power to take direct contractual action to augment the probation officer staff.

21. COURTS — PROBATION OFFICERS — RECOMMENDATION — APPOINTMENTS.

> Recommendation of as many probation officers as deemed necessary may be made by the court, and the corrections commission may appoint as many of that number as it determines are needed in accordance with its policies and standards (MCLA §§ 771.7, 771.12).

22. COUNTIES — CORRECTIONS COMMISSION — PROBATION OFFICERS — FINANCIAL BURDEN — PLENARY POWER.

> Plenary power is vested in the corrections commission to impose financial burdens upon the counties by appointment of probation officers by the commission to be paid by the counties (MCLA §§ 771.7, 771.12).

23. COUNTIES—EXPENSES OF JUSTICE—STATE GOVERNMENT.

Expenses of justice are incurred for the benefit of the state and charged against the counties in accordance with old usage as a proper method of distributing the burden.

24. CRIMINAL LAW — PROBATIONERS — SUPERVISION — DEPARTMENT OF CORRECTIONS.

The work of supervising criminal probationers is a state function, jurisdiction of which is vested in the department of corrections (MCLA § 791.204).

25. CRIMINAL LAW—BUREAU OF PROBATION—DEPARTMENT OF CORRECTIONS—COUNTIES—EXPENSES—SERVICE GRANTS.

A bureau of probation has been created by statute within the department of corrections, and in counties of less than 500,000 population the expense of administering probation service is to be met by the county or counties served, or if any county is unable to maintain adequately its probation program according to standards set by the state bureau of probation, service grants may be made available to that county (MCLA §§ 791.225, 791.226).

26. STATUTES—POPULATION—CLASSIFICATION—LEGISLATIVE PURPOSE.

Specified population may be made the test of the applicability of a general legislative act if it is a reasonable and logical basis of classification, but where the subject of legislation has no obvious relation to the purpose sought to be accomplished an attempt to make the application of the legislative act dependent on population is unwarranted and amounts to local legislation.

27. STATUTES — POPULATION — PURPOSE — CRIMINAL LAW — CONSTITUTIONAL LAW — INVALID CLASSIFICATION — LOCAL LEGISLATION.

Population's only obvious relation to the purpose of legislation enacted to discharge the state's responsibility for the correction and rehabilitation of criminals is that in populous areas of the State there is a greater need for commitment of the State's resources for rehabilitation of criminals; thus where a county with a population over 500,000 is excluded by statute, on the basis of population, from provisions of legislation enacted to discharge the State's responsibility for correction and rehabilitation of criminals, the exclusionary provision is unconstitutional as an invalid classification constituting local legislation (MCLA § 791.201 *et seq.*).

28. STATUTES — POPULATION — CLASSIFICATION — PROBATION DE-
PARTMENT — COUNTIES — CONSTITUTIONAL LAW.

> Classification by population should be prospective and calculated
> to embrace any change in population or circumstances; thus
> where legislation providing for grants of money for criminal
> probation work excludes a probation department "heretofore
> established" in a county of over 500,000 population and makes
> no provision to exclude other departments when their counties
> exceed a population of 500,000, the legislation is unconstitu-
> tional as an invalid classification (MCLA § 791.226).

29. MANDAMUS — DECLARATORY JUDGMENT — JUDGES — COUNTIES —
COURT PERSONNEL — SALARIES — APPROPRIATION — CONSTITUTION-
AL LAW.

> In action for mandamus or declaratory judgment by circuit
> judges against a county where they have jurisdiction to compel
> that county to appropriate money for salaries of additional
> personnel *held*, judges may not employ additional law clerks;
> judges may employ a judicial assistant with duties as con-
> templated by statute; the judicial assistant may present, in
> circuit court, his claim for services rendered; judges may rec-
> ommend persons for appointment as probation officers; the
> corrections commission may appoint probation officers upon rec-
> ommendation of circuit judges; appointed probation officers
> are entitled to the salary established by the board of super-
> visors; and the statute purporting to exclude counties with
> a population over 500,000 from the act establishing a bureau
> of probation is unconstitutional (GCR 1963, 865.1[7]; MCLA
> §§ 600.1481, 771.7, 791.201 *et seq.*, 791.226).

SEPARATE OPINION.
BLACK, J.

30. COURTS — JUDICIAL RESPONSIBILITY — INHERENT POWER — CON-
STITUTIONAL LAW.

> *A court charged with the preclusive responsibility for efficient*
> *state-wide judicial service, as the Supreme Court is, receives*
> *and accepts with that responsibility the inherent power and*
> *duty to take such action as is necessary to fulfill the consti-*
> *tutional obligation thus undertaken.*

31. COURTS—CONSTITUTIONAL LAW—STATE GOVERNMENT—INHERENT
POWER.

> *The constitutionally assigned duty of the Supreme Court carries*
> *with it the power and responsibility of making sure that the*
> *Court functions as a co-equal branch of the state's govern-*

*ment, and therefore imposes obligation to ascertain critical judicial needs and reasonableness or unreasonableness of the monetary amount required . to meet situations which arise (Const 1963, art 6, § 1).*

32. COURTS—COUNTIES—JUDICIAL EXPENSES—STATE'S BENEFIT.

*Valid charges upon funds of a county can be made by exercise of the inherent power of the state's judicial system, because expenses of justice are incurred for the benefit of the state, and charged against the counties in accordance with old usage as a proper method of distributing the burden.*

33. COURTS — JUDICIAL NEEDS — PROBATION OFFICERS — COUNTIES — LEGAL DUTY.

*The defense that a county has exclusive power to determine and allocate where its available funds will go and that therefore it need not pay for additional administrative help in the courts is not valid where the facts are that the courts need additional help, especially probation officers, and the amount requested to pay for the help is reasonable.*

34. APPEAL AND ERROR—COURTS—JURISDICTION—JUDGMENTS—COUNTIES—LEGAL DUTY.

*Jurisdiction should be retained by the Supreme Court for further proceedings if necessary upon affirmance by the Supreme Court of a circuit court judgment that a county has a legal duty to budget for and pay court personnel appointed by circuit court judges.*

SEPARATE OPINION.
T. M. KAVANAGH AND ADAMS, JJ.

35. CONSTITUTIONAL LAW — STATE GOVERNMENT — LEGISLATURE — JUDICIARY — APPROPRIATIONS.

*The Constitution of this State provides that the powers of government are divided into 3 branches, the legislative, executive, and judicial, with the legislative branch being composed of a senate and a house of representatives which have the power to appropriate funds for government operation, while the judicial power is vested exclusively in one court of justice with all the power that is inherent in that judicial power (Const 1963, art 3, § 2; art 4, §§ 1, 30, 31; art 6, § 1).*

36. CONSTITUTIONAL LAW—LEGISLATIVE POWER—APPROPRIATIONS.

*The power to appropriate money is specifically set forth in the Constitution as a legislative power (Const 1963, art 4, §§ 30, 31).*

37. CONSTITUTIONAL LAW—COUNTY GOVERNMENT—BOARD OF SUPER-
VISORS—LEGISLATIVE POWER.

*The Constitution of this State provides that boards of super-
visors shall have legislative, administrative, and such other
powers and duties as provided by law (Const 1963, art 7, § 8).*

38. COURTS—INHERENT POWER—INTERPRETATION—BASIC OPERATION
—NECESSITY—CONVENIENCE.

*The term "inherent power of courts" is one of almost unlimited
application since the courts determine what inherent power is,
and the inherent power of courts has been variously defined;
however, in this State, the inherent power of courts should be
used only in those cases where it is essential to assure the
continued existence or basic functioning of courts, the test
in using inherent power being the ability of a court to operate
as a court, not whether the court can operate more conveniently
or expeditiously if it has some additional means to carry out
the court's functions.*

39. COURTS—INHERENT POWER—COURT PERSONNEL—COMPENSATION—
LEGISLATIVE BRANCH—APPROPRIATION.

*Law clerks, probationary officers, or a judicial assistant are not
so essential to the operation of a circuit court as to be a
proper case for invoking the doctrine of inherent power of the
court, and the judicial branch of government should present
to the legislative branch of government a request for funds,
with which law clerks, probationary officers, and a judicial
assistant could be compensated, for consideration and alloca-
tion of available funds based on legislative decision.*

40. COURTS—STATUTES—JUDGES—COURT PERSONNEL—EMPLOYMENT
—COMPENSATION—APPROPRIATION.

*Statute provides that circuit courts may employ law clerks or
judicial assistants with the compensation of such employees
being fixed by the recommending judges within the sum ap-
propriated by the legislative body of the governmental unit
which pays the compensation of the judges (MCLA §§ 600-
.1471, 600.1481).*

41. COURTS—STATUTES—PROBATION OFFICERS—COMPENSATION—EM-
PLOYMENT—COURT PERSONNEL.

*Statutes provide that the circuit court may recommend assistant
probation officers who shall receive compensation as the board
of supervisors of the county provides, with the provided com-
pensation being paid out of the treasury of the county where
the probation officer acts, but these statutes merely allow the
courts to recommend appointment of additional employees*

*and do not empower the circuit courts to employ anyone or to fix compensation (MCLA §§ 771.7, 771.12).*

42. COURTS — INHERENT POWER — IMPLEMENTATION — STATUTES — LEGISLATURE — JUDICIARY.

*Inherent power of a court needs no statutory implementation, but where a court is proceeding under a statute it is bound by the terms and conditions of the statute and the action taken must conform to the statute and not be in derogation of the part of the statute which imposes restrictive conditions, and where the court proceeds under the statute, there is no legislative encroachment upon the inherent power of the judiciary.*

43. COURTS—INHERENT POWER—COURT PERSONNEL—EMPLOYMENT—COMPENSATION—LEGISLATIVE POWER.

*The inherent power of courts is not appropriately exercised to employ and compensate law clerks, probation officers, and judicial assistants where there is a direct confrontation with the legislative power and where such employment does not involve basic needs for the performance of the judicial function.*

44. COURTS — STATUTES — COURT PERSONNEL — AUTHORITY — LEGISLATURE — APPROPRIATION — COMPENSATION.

*Courts do not have authorization under statute to employ law clerks, probation officers, or judicial assistants solely upon their own authority without legislative appropriation of the necessary funds.*

45. COSTS — PUBLIC QUESTION — MANDAMUS — COURT PERSONNEL — COMPENSATION — APPROPRIATION.

*No costs are allowed upon appeal from a writ of mandamus, issued by the circuit court and affirmed by the Court of Appeals, against the county, its board of supervisors, and its treasurer to compel them to appropriate money for salaries of certain additional personnel, a public question being involved.*

Appeal from Court of Appeals Division 1, J. H. Gillis, P. J., and Fitzgerald and Levin, JJ., affirming Wayne, William J. Beer, J., presiding. Submitted June 4, 1969. (Calendar No. 9, Docket No. 52,381.) Decided December 8, 1969. Rehearing granted July 27, 1969.

15 Mich App 713, reversed.

Complaint by the judges of the Third Judicial Circuit against Wayne County, its Board of Supervisors, its Board of Auditors, and its treasurer, for a writ of mandamus to compel the appropriation of money for salaries of additional personnel. Judgment for plaintiffs. Defendants appealed to the Court of Appeals. Affirmed. Defendants appeal. Reversed and remanded for entry of a declaratory judgment.

*Travis, Warren, Nayer & Burgoyne,* and *Tom Downs,* for plaintiffs.

*William L. Cahalan,* Prosecuting Attorney, and *Aloysius J. Suchy,* and *David R. Kaplan,* Assistant Prosecuting Attorneys, for defendants.

T. E. BRENNAN, C. J.

### THE CASE

This action is brought by the judges of the third judicial circuit of Michigan against the defendant county and its officers, praying for mandamus and certain declaratory relief. The facts of the case will appear in the body of the opinion.

### FIRST ISSUE: MANDAMUS

This Court declines to affirm the issuance of mandamus at this time as prayed. See *Commonwealth of Virginia* v. *State of West Virginia* (1918), 246 US 565, 604 (38 S Ct 400, 62 L Ed 883).

### SECOND ISSUE: DECLARATORY RELIEF

This Court has jurisdiction in the interest of the administration of justice, pursuant to GCR 1963,

865.1(7), to act upon plaintiffs' petition for a declaration of rights.

"However, it should be noted that the plaintiffs, in their bill of complaint, ask for a declaratory decree, to settle controlling questions of law; and counsel for the city likewise ask that we decide the merits of the questions raised here in order to have an early decision, because of the need for prompt relief of congested traffic and parking conditions in Detroit and to avoid any further delay in the issuance of revenue bonds. With that in mind, instead of taking a short cut by deciding the matter on the ground that the plaintiffs have no standing in court, we have concluded to follow the method recently adopted in the *Nichols Case,* [*Nichols* v. *State Administrative Board* (1954), 338 Mich 617], and decide the merits of the questions raised." *City of Detroit* v. *Wayne Circuit Judges* (1954), 339 Mich 62, 71.

### THIRD ISSUE: THE INHERENT POWER OF COURTS

The three powers of government are separated in Michigan by constitutional mandate. Const 1963, art 3, § 2.

The judicial power of this State is vested in one court of justice. Const 1963, art 6, § 1.

Judicial power is the power to decide cases between contending parties and to determine legal rights in other cases where permitted by law. See Const 1963, art 3, § 8.

In *Attorney General, ex rel. Cook,* v. *O'Neill* (1937), 280 Mich 649, reference is made to the separation of the three great powers of government, being as distinct and independent of each other as the nature of society and the imperfections of human institutions will permit.

It is the imperfection of human institutions which gives rise to our notion of inherent power. It is

simply impossible for a judge to do nothing but judge; a legislator to do nothing but legislate; a governor to do nothing but execute the laws. The proper exercise of each of these three great powers of government necessarily includes some ancillary inherent capacity to do things which are normally done by the other departments.

Thus, both the legislative department and the judicial department have certain housekeeping chores which are prerequisite to the exercise of legislative and judicial power. And, to accomplish these housekeeping chores both departments have inherently a measure of administrative authority not unlike that primarily and exclusively vested in the executive department.

The inherent power of the judiciary is a judicial power, but only in the sense that it is a natural necessary concomitant to the judicial power.

The inherent power of the Court is non-adjudicatory. It does not deal with justiciable matters. It relates to the administration of the business of the Court.

In the constitutional scheme of things, the largest measure of this inherent power is vested in the Supreme Court. To this Court falls the constitutional responsibility to superintend the administration of justice throughout the State. The assignment of judges, the advancement of judicial education, the maintenance of judicial statistics, the division of judicial business, the supervision of the Bar, are all technically administrative functions, but they are reposed in the Court by the same Constitution which declares the absolute separation of governmental powers. That this Court has the inherent power to fulfill its mandate cannot be doubted. Not the least of the duties of this Court is the function of assessing and declaring the needs

of the administration of justice. In the discharge
of this duty, the Court exercises its inherent power
to prepare and submit a judicial budget and to
support and urge in the executive chambers and
the legislative halls those fiscal, organizational and
other measures which are deemed expedient and
needful to the convenient and efficient administra-
tion of justice.

Similarly, this Court and the circuit courts have
the responsibility and the power to assess and de-
clare the needs of the judiciary and the adminis-
tration of justice on the local level.

This broad power to assess and declare the needs
of administering justice does not usurp the fiscal
authority of the legislative department. The courts
do not levy taxes, or appropriate public monies.
These things must be done by the legislative bodies,
whose responsibility it is to supply the needs, not
only of the administration of justice but also of all
those other areas of public concern which are proper
subjects for governmental action.

Nevertheless, the inherent power of courts is not
exhausted when the needs of administration of jus-
tice have been declared and urged upon the legis-
lative councils.

There remains a narrower area in which the
courts have inherent power to go further than
merely declare the existence of a need. It is an
area in which the courts have inherent power to
bind the State or the county contractually.

It is clear that our Constitution established an
independent co-equal judicial branch of government.
It is clear that the operation of this co-equal branch
of government is one of the proper expenses of state
government, for which taxes must be levied (Const
1963, art 9, § 1), and with which executive fiscal
policies may not interfere (Const 1963, art 5, § 20).

If, therefore, a particular item of expense is necessary to the effectively continuing functioning of the Court, that item must be paid. In this context, we do not use the broader phrase "needs of administration of justice." Instead, we deliberately choose the narrower term "necessary to the effectively continuing functioning of the court." The test is not *relative need,* but *practical necessity.*

We do not propose here to itemize those expenses which are necessaries. What may be deemed necessary for an appellate court may not be essential in a trial court. What may be crucial in a metropolitan court may be superfluous in the hinterlands.

### Fourth Issue: Inherent Powers: How They Are Exercised

A judge by presuming to act contractually in the exercise of inherent powers does not adjudicate anything. He acts administratively. Tested judicially, his action may be *ultra vires* if factually it should appear that the expense incurred was not practically necessary to the effectively continuing operation of the court.

A reading of Const 1963, art 9, § 22, together with the court of claims act, PA 1961, No 236 (MCLA §§ 600.6401–600.6475, Stat Ann 1962 Rev §§ 27A-.6401–27A.6475), demonstrates that our Constitution and laws contemplate that the State can be bound even beyond existing appropriations *ex contractu* no less than *ex delicto.* See particularly MCLA § 600.6458 (Stat Ann 1962 Rev § 27A.6458), which provides for certification to the legislature of judgments against the State for the payment of which no appropriation has been made.

*Stowell* v. *The Board of Supervisors for Jackson County* (1885), 57 Mich 31, makes it clear that the circuit judge does have authority to act contrac-

tually, and that the county is the proper arm of state government upon which the necessary expense of operating the circuit court devolves. The authority of a judge to bind the county or the state is never broader than the necessity which prompts its exercise. Actual authority, not apparent authority, is the criterion. Actual necessity must be alleged and shown by the claimant. Our re-affirmance of this ancient power will cause no rush to market by the judges. They are aware of the rule which makes an agent liable upon implied warranty of authority if his action exceeds his commission. Nor are vendors or employees likely to queue up for the prospect of litigating in the court of claims.

### FIFTH ISSUE: LAW CLERKS

Under appropriate factual circumstances, a circuit court may exercise its inherent power for the purpose of employing a law clerk or law clerks. On the basis of the record before us in this case we hold that there is no practical necessity at this time for additional law clerks in the third judicial circuit. Further, we do not decide whether the judges of the third circuit are empowered by statute to employ law clerks in the absence of an appropriation for that purpose. CLS 1961, § 600.1471 (Stat Ann 1962 Rev § 27A.1471).

As to superintendency of the judiciary, see Const 1963, art 6, § 4. We are not persuaded that the judges of the third circuit have demonstrated the practical necessity of employing law clerks at this time. And accordingly, we will direct them to withdraw their request for such clerks, reserving the administrative jurisdiction to redetermine the necessity at a later date.

SIXTH ISSUE: THE JUDICIAL ASSISTANT

The question of the exercise of the inherent power of the judges of the third circuit to employ a judicial assistant is before us on this record. The court did in fact employ a judicial assistant, and fixed his salary at $25,000 per year. Irrespective of the statute on the subject (MCLA § 600.1481 [Stat Ann 1962 Rev § 27A.1481]), we find that a judicial assistant of the type contemplated by the statute is a practical necessity for the effectively continuing operation of a metropolitan circuit court consisting of 27 judges, such as the third circuit.

Accordingly, we will remand this cause to the trial court for further proceedings as to this aspect of the action and to permit the affected party in interest to be joined as a plaintiff and to submit his claim for services for factual and final determination. In such remanded proceedings the judicial assistant will be the plaintiff and the circuit judge assigned to hear the matter will sit as in other causes.

SEVENTH ISSUE: INHERENT POWER,
PROBATION OFFICERS

On the record before us, we are not called upon to decide whether the circuit judge should exercise inherent power to employ additional probation officers. There is no doubt that in some circumstances a court should exercise inherent power to appoint a probation officer. By statute, MCLA § 771.14 (Stat Ann 1954 Rev § 28.1144), a court is required to obtain the report of a probation officer before pronouncing sentence in certain cases. The courts cannot be prevented from proceeding to sentence by the absence of a probation officer, and direct contractual action by the judge would be warranted

where necessary to the performance of his judicial duties.

On the other hand, we are not prepared to say that a court should exercise inherent power to take direct contractual action to augment the probation staff for the purpose of assuring a more adequate and effective ratio of supervisory officers to probationers.

The interest of the judiciary in the rehabilitative process is keen but not paramount. Corrections, pardons, and paroles are historically the primary responsibility of the executive branch of government. And while such things are appropriately within the purview of a broad concept of the needs of justice, they are not normally a part of the narrower notion of practical necessities of effectively continuing court functioning. The exigencies of a particular case may indeed dictate the appointment of a particular person to supervise a particular defendant. In such case, the inherent power of the court to act directly may be called into play. But this is quite a different thing than the policy decision implicit in the establishment of supervisory ratios.

### EIGHTH ISSUE: PROBATION OFFICERS: STATUTORY POWER TO RECOMMEND

The paramount interest of the executive in the correctional process is recognized by the statute governing the appointment of probation officers. MCLA § 771.7 (Stat Ann 1969 Cum Supp § 28.1137). The function of the judges is merely to recommend. The power of appointment is retained in the executive branch and vested specifically in the corrections commission.

Unlike the statute governing law clerks and judicial assistants, MCLA § 771.7 makes no reference to appropriation. The phrase "and who shall receive

such compensation as the boards of supervisors of the several counties shall provide" merely refers to the amount of salary established for the position and not to the number of such probation officers. It is analogous to a statute governing employment of state employees who receive compensation "as provided by law."

It follows that the court may recommend the names of as many probation officers as it feels are necessary to maintain the appropriate level of supervision and investigation, and the corrections commission may appoint as many of that number as it determines are needed in accordance with its policies and standards, whereupon such employees shall receive the compensation established by the board of supervisors for assistant probation officers. Nor does MCLA § 771.12 (Stat Ann 1954 Rev § 28.1142), negate this interpretation:

"Sec. 12. The salary and necessary expenses of the chief probation officer and each assistant probation officer shall be paid monthly out of the treasury or treasuries of the county or counties composing the circuit within which such probation officer or officers shall act, where provision has been made by the board of supervisors of such county or counties for their payment."

This statute deals with the time, the source, and the method of payment. It does not imply that the salary and necessary expenses shall not be paid where no provision is made for their payment, but only that in such cases payment would not be made monthly.

That the law vests the corrections commission with plenary power to impose financial burdens upon the counties may be distressing to the appellants, but it is not novel. State-mandated expenditures are familiar to county supervisors.

In *Stowell, supra,* we held:

"[T]he expenses of justice are incurred for the benefit of the State, and only charged against the counties in accordance with old usage, as a proper method of distributing the burden."

### NINTH ISSUE: SERVICE GRANTS: VALIDITY OF WAYNE COUNTY EXCLUSION

It remains to consider whether the legislative design for financing probation services is a proper method of distributing the burden of this admittedly state responsibility.

The probation laws are an integral part of the administration of justice in the State of Michigan. Probation officers are appointed by the state executive authority acting through the corrections commission upon the recommendation of state officers, circuit judges. The work of supervising probationers is a state function. Jurisdiction is lodged in the department of corrections. MCLA § 791.204 (Stat Ann 1969 Cum Supp § 28.2274), provides:

"Sec. 4. Subject to constitutional powers vested in the executive and judicial departments of the state, the department shall have exclusive jurisdiction over the following: (a) Probation officers of this state, and the administration of all orders of probation."

Chapter 2 of PA 1953, No 232 (MCLA § 791.221 *et seq.,* Stat Ann 1954 Rev § 28.2291 *et seq.*), creates a bureau of probation within the department of corrections. Sections 25 and 26 of that act are particularly noteworthy.

"Sec. 25. Where the courts of more than 1 county are served by the same probation officer or officers, the compensation of such officer or officers and the expenses of administering probation service within

such counties shall be met jointly by the boards of supervisors therein: Provided, That when it shall appear to the commission that any county is unable to adequately maintain its probation program according to the standards set by the state bureau of probation, then service grants to such an extent and under such conditions as the commission may determine, may be made available to said county: Provided, That uniform rules to be followed in making available such service grants first shall be promulgated by the commission." MCLA § 791.225 (Stat Ann 1954 Rev § 28.2295).

"Sec. 26. The provisions of this chapter shall not apply to probation departments heretofore established in any county of over 500,000 population, according to the latest or each succeeding federal decennial census." MCLA § 791.226 (Stat Ann 1954 Rev § 28.2296).

Population as a measure of legislative classification has been considered by this Court many times. In *Mulloy* v. *Wayne County Board of Supervisors* (1929), 246 Mich 632, at page 635, we held:

"If it is a reasonable and logical basis of classification, considering the subject of legislation, unquestionably a specified population may be made the test of the applicability of a general legislative act; and under such conditions the act will not be construed to be invalid as local legislation. *Hayes* v. *Auditor General* (1915), 184 Mich 39. But where the subject of legislation is such that population has no obvious relation to the purpose sought to be accomplished, an attempt to make the application of the legislative act dependent on population is unwarranted and amounts to local legislation. *Attorney General, ex rel. Dingeman,* v. *Lacy* (1914), 180 Mich 329."

PA 1953, No 232, is entitled,

"An act to revise, consolidate and codify the laws relating to probationers and probation officers as

herein defined, to pardons, reprieves, commutations
and paroles, to the administration of penal institu-
tions, correctional farms and probation recovery
camps, to prison labor and prison industries, and
the supervision and inspection of local jails and
houses of correction; to create a state department
of corrections, and to prescribe its powers and
duties; to provide for the transfer to and vesting
in said department of powers and duties vested by
law in certain other state boards, commissions and
officers, and to abolish certain boards, commissions
and offices the powers and duties of which are hereby
transferred; to prescribe penalties for the violation
of the provisions of this act; and to repeal all acts
and parts of acts inconsistent with the provisions
of this act."

The purpose of this legislation is to discharge the
state's responsibility for the correction and rehabil-
itation of criminals. If population has any obvious
relation to this purpose, it would be that in the
populous areas of the state there is a greater need
for the commitment of the state's resources and the
discharge of the state's responsibility to correct and
rehabilitate criminals. In *Hayes* v. *Auditor General,*
*supra,* we said at page 42:

"County agents, under the provisions of act No
6 of the Public Acts of 1907 (Extra Session) (2 How
Stat [2d ed] § 3458), are charged with numerous
duties relating to the care, investigation, and super-
vision of dependent, neglected, and delinquent chil-
dren. It is a well-known fact that the problem of
dependency, neglect, and delinquency of children is
practically limited to communities with congested
population. * * * The legislature undoubtedly
had in mind the fact that, on account of the number
of cases, their complexity, and the added responsibil-
ity entailed thereby, the counties with congested
population demanded the services and therefore the

pay of an efficient, high-grade officer with more or less expert knowledge and training."

We can easily paraphrase what was said in *Hayes* by substituting "probation officer" for "county agent" and "convicted criminal" for "delinquent children." But we cannot reconcile the legislative intent considered in that case with the legislative scheme disclosed by § 26 and considered here.

To what permissible purpose does the state commit its resources to maintain an adequate probation program in every part of the state, except where it is needed most? By what logic is law and order deemed a local problem in one county and a statewide problem in another?

The discriminatory thrust of § 26 is the more apparent when its classifying language is considered. In 1953, there was only one probation department "heretofore established" in a county of over 500,000 population, and no others could thereafter become "heretofore established" irrespective of any succeeding decennial census.*

*Mulloy* v. *Wayne County Board of Supervisors, supra,* at page 638, emphasizes that,

" 'The classification should be prospective, calculated to embrace any change in population or circumstances,' "

and that the classification

" 'must be so framed as to include in the class additional members as fast as they acquire the characteristics of the class.' *Bingham* v. *Board of Supervisors of Milwaukee County* (1906), 127 Wis 344 (106 NW 1071)."

PA 1953, No 232, § 26 is unconstitutional as an invalid classification constituting local legislation

---

* Oakland County, which passed the 500,000 mark in the 1960 census, continued to receive grants until after this litigation was commenced.

in violation of Const 1963, art 4, § 29. The invalidity of § 26 does not by reason of MCLA § 8.5 (Stat Ann 1969 Rev § 2.216), affect the balance of the act.

Summary

We hold that:
Under our power to grant appropriate relief pursuant to GCR 1963, 865.1(7), we grant the following declaratory relief:

(a) The judges of the third circuit may not employ additional law clerks at this time.

(b) The judges of the third circuit may employ a judicial assistant, with duties as contemplated by MCLA § 600.1481 (Stat Ann 1962 Rev § 27A.1481).

(c) This cause shall be remanded to circuit court for substitution of parties plaintiff, permitting the judicial assistant heretofore employed by the judges to present his claim for services rendered.

(d) MCLA § 771.7 (Stat Ann 1969 Cum Supp § 28.1137) authorizes circuit judges to recommend persons for appointment as probation officers;

(e) MCLA § 771.7 (Stat Ann 1969 Cum Supp § 28.1137) authorizes the Michigan corrections commission to appoint probation officers upon the recommendation of circuit judges;

(f) probation officers appointed by the corrections commission are entitled to receive the salary established by the board of supervisors for that position;

(g) MCLA § 791.226 (Stat Ann 1954 Rev § 28-.2296) purporting to exclude Wayne County from the provisions of PA 1953, No 232, is unconstitutional.

Remanded for entry of declaratory judgment in accordance with this opinion. No costs, a public question being involved.

KELLY, BLACK, and T. G. KAVANAGH, JJ., concurred with T. E. BRENNAN, C. J.

BLACK, J. (*for affirmance in part and retention of jurisdiction*). In the appellate opinion below (15 Mich App 713, 721, 722) Judge LEVIN has carefully collected what seems to be authority unanimous that a court, certainly one charged as this Court is with the preclusive responsibility for efficient all-over-the-State judicial service, receives and accepts with that responsibility the inherent power and duty to take such action as is reasonably necessary to fulfil the constitutional obligation thus undertaken. I agree with that authority, noting that it is fully consistent with the power and duty which Michigan's present Constitution imposes upon her Supreme Court. Such power and duty probably transcends that which is imposed correspondingly by any of the other State Constitutions.

We need not repeat that the inherent power called up by this case must be cautiously exercised, or that it should pass every test of that guarded control which self-restraint exacts when there can be no review or appeal beyond impeachment, removal, or appeal to the people, say for a constitutional change or the defeat of some allegedly over-activistic Justice or Justices. All that is freely acknowledged, yet is beside the point.

The point indeed is sharp. Having declared openly the inherent power thus called into play, the essence of which is that the constitutionally-assigned duty of a court such as ours automatically carries with it the power and responsibility of making continuantly sure that this "one court of justice" (Const 1963, art 6, § 1) functions serviceably as a co-equal branch of Michigan's government, we cannot without abdication avoid the instantly painful

obligation of ascertainment of critical judicial needs and, if that ascertainment be affirmative (it is here indeed), of determining the reasonableness or unreasonableness of the monetary amount required to meet the urgency of the situation. Such a determination is due from this Court whether the amount involved is a comparative trifle,[1] or as here is an approximate $200,000 per year for payment of the salaries and expenses of additional probation officers, plus the other expenses of necessary judicial administration which Judge Levin has described in his opinion.

As for the facts, there is no dispute. The third circuit emergently requires the additional administrative help which in the trial court was adjudged. The reasonableness of the amounts asked for by the Wayne judges to provide such help is not contested, nor could it be. All such questions were settled by proof or formal concession, leaving only the real defense: that the defendant county simply hasn't sufficient money to meet all demands upon the county treasury and that it has the exclusive power to determine and allocate where its available funds should go. That defense is simply that the judicial system of Michigan lacks the power to create valid charges upon funds of the county. It was rejected in the *Stowell Case, supra,* and we should reject it now.

Justice Campbell wrote, in *Stowell* at 33, 34:

"It is within the legislative power to arrange specifically how all these matters should be disposed of; but as the law now stands, the inherent power

---

[1] Such as the amount involved in *Stowell* v. *Board of Supervisors for Jackson County* (1885), 57 Mich 31. There the circuit judge, having "deemed it necessary to seclude the jurors from association with the public" during the trial of a murder case, arranged with the plaintiff hotelkeeper to board and lodge the jurors while the trial progressed. The board refused to pay the hotelkeeper's bill, whereupon he sought mandamus. The writ issued; Justice Campbell writing for a unanimous Court.

and duty of courts to exercise their functions must authorize such action as becomes expedient in the course of judicial business."

Then came the concluding paragraphs of his opinion, paragraphs I deem directly applicable here (pp 34, 35):

"Of the power of courts to incur similar expenses generally for court exigencies, so as to bind the county, without statute, the authorities are quite clear. *People* v. *Stout* (NY, 1856), 23 Barb 349; *McCalmont* v. *The County of Allegheny* (1857), 29 Penn St 417; *Supervisors of Crawford County* v. *Le Clerc* (Wis, 1851), 4 Chand 56; *White* v. *Polk County* (1864), 17 Iowa 413.

"Our own decisions have always held that while the supervisors are, under the Constitution, exclusive judges of the propriety of services for the county, yet they have no such exclusive power over those county charges that are not for such services; and we have also held that the expenses of justice are incurred for the benefit of the State, and only charged against the counties in accordance with old usage, as a proper method of distributing the burden. *People* v. *Board of Auditors of Wayne County* (1865), 13 Mich 233. Also cases in note to *Kennedy* v. *Gies* (1872), 25 Mich 83 (annotated ed). Any other rule would put it in the power of a board of supervisors to prevent courts from exercising their proper functions. In my opinion the supervisors were bound to audit this account.

"Mandamus must issue as prayed, without costs."[2]

---

[2] The opinion proposed for reversal in one hand and the *Stowell* opinion in the other, one is led to wonder what the holdback members of this Court will do should some board of supervisors—fed up as most are with the mounting public cost of free criminal appeals, transcripts, etc.—refuse to honor one of the many drafts our judicial system draws weekly on county treasuries. Would that be the kind of case which is inappropriate "for the exercise of the inherent power of the courts."? Or would we fall supinely back upon a duty defined by legislation, in lieu of our constitutional duty?

This record is more than persuasive that the probationary needs of the third circuit are critically pressing; that probation is failing there for want of regular person-to-person attention to probationers by a sufficient number of trained probation officers, and that the necessity for an even greater number of such officers than was originally pleaded has mounted since the institution of this litigation. The record is replete with overwhelming proof, not just of expert opinion but of signal success of the already-tried Saginaw pilot project, that adequately supervised probation accomplishes a record of rehabilitation which more or longer prison sentences simply cannot duplicate. The proof also tends to establish, without dispute by any witness or traverse by the defendants, that improved probationary supervision, costly as it is, involves a considerably lessened expenditure of public funds than the only other alternative. That alternative is more and more prison sentences, more and more prisons to be constructed and maintained, more and more guards and prison personnel to be hired, and more and more failure of rehabilitation of the adjudged criminal.

The real issue here is not the sufficiency of proof of extreme need, or of carefully ascertained moderation of the amount involved. That has been settled of record and fortified by our own knowledge begotten of some little familiarity, as general superintendent, with the administration of criminal justice in the third circuit.

The primary issue instead is whether this Court should affirm the circuit court's determination of duty of the defendants to budget and pay. I would so affirm yet, out of that respect which the judicial branch owes to the evident honest belief of the defendant public officers in the total exclusivity of the fiscal powers that are vested in them by law, submit

that we should withhold issuance of any peremptory process so as to provide a fair opportunity for study by the defendants of our decision and determination —as constitutional compeers may rightfully and hopefully expect of each other—to voluntarily comply with the monetary requests the courts below have upheld.   Here I would follow the lead of the Supreme Court in *Commonwealth of Virginia* v. *State of West Virginia* (1918), 246 US 565, 604 (38 S Ct 400, 62 L Ed 883).   There the Court had before it the issue of enforced payment, by West Virginia to Virginia, of the judgment which the Court had entered in favor of one against the other in the sum of $12,393,929.50.[3]

The Court posed and then discussed today's question at length (pp 600–606): "What are the appropriate remedies for such enforcement?"   The discussion is of historic as well as precedential interest. It included consideration, but expressly omitted decision, of this Court-raised issue; whether "there is power to direct the levy of a tax adequate to pay the judgment and provide for its enforcement irrespective of state agencies." (p 604.)   The decision finally reached was that of restoration of the case to the Court's docket for the purposes set forth in the concluding paragraph of the Court's opinion (pp 605, 606).   That was done upon the hopeful and ultimately prosperous premise that, "if we refrain now from passing upon the questions stated, we may be spared in the future the necessity of exerting compulsory power against one of the States of the Union to compel it to discharge a plain duty resting upon it under the Constitution."   (p 604.)[4]

---

[3] The judgment appears in full, 246 US at 568.   For the background of this case, going back to the admission of West Virginia to the Union in 1863, see *Virginia* v. *West Virginia* (1907), 206 US 290 (27 S Ct 732, 51 L Ed 1068).

[4] The clerk of the United States Supreme Court advises that the Court's Journal contains this entry under date of March 1, 1920:

I vote for what to me is a due holding that the defendants are under legal duty to budget and pay as ordered in circuit, but to retain jurisdiction for further proceedings if necessary, including such as may arise upon the plaintiffs' pending request for determination and payment of counsel fees and expenses.

Dethmers, J., concurred with Black, J.
*Supplement (December 5 1969):*

Since the foregoing views were submitted to the other Justices, the Chief Justice has contributed his opinion. It stands for reversal and remand for entry of a declaratory judgment, summarized by subparagraphs (a) through (g) thereof appearing *ante* at 32.

Adhering to my firmer-by-the-day conviction that this constitutionally responsible superintendent of Michigan's one court of justice should record a long-since-overdue holding that the defendants are under legal duty to budget and pay as ordered in circuit, and simply to attain an affirmative determination—if at all possible now—in lieu of our present paralysis of decision, I have endorsed the opinion of the Chief Justice. I have done so with some little reluctance, being of opinion that assignments of oath-bound duty, made by self-executing constitutional provisions, require no aid or analysis of statutory provisions.

There is highly respectable precedent for concurrence of such nature. Both in *Time* v. *Hill* (1967),

---

"No. 2, Original. *Commonwealth of Virginia*, complainant, v. *State of West Virginia*. Acknowledgment of satisfaction of decree of this court of June 14, 1915, in favor of complainant presented, and ordered filed."

For an interesting discussion of *Virginia* v. *West Virginia*, and of the power of the court to compel payment, see Chief Justice Charles Evans Hughes' "The Supreme Court of the United States" (1928), pp 126–129.

385 US 374, 398 (87 S Ct 534, 17 L Ed 2d 456), and *Curtis Publishing Co.* v. *Butts* (1967), 388 US 130, 170 (87 S Ct 1975, 18 L Ed 2d 1094), Mr. Justice Black, "in order for the court to be able at this time to agree on an opinion in this important case based on the prevailing constitutional doctrine," entered his successive concurrences without receding "from any of the views I have previously expressed."

ADAMS, J. (*concurring in part, dissenting in part*).

## I. *Constitutional Provisions.*

Section 2 of article 3 of the 1963 Michigan Constitution provides:

"The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."

Section 1 of article 4 of the 1963 Michigan Constitution provides:

"The legislative power of the State of Michigan is vested in a senate and a house of representatives."

The power to appropriate money is specifically set forth as a legislative power in sections 30 and 31 of article 4.

Section 8 of article 7 provides:

"Boards of supervisors shall have legislative, administrative and such other powers and duties as provided by law."

Section 1 of article 6 of the 1963 Constitution sets forth the judicial power as follows:

"The judicial power of the state is vested exclusively in one court of justice which shall be divided

into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house."

It was said in *Leahey v. Farrell* (1949), 362 Pa 52 (66 A2d 577, 578):

"Article V, Section 1 of the Constitution of Pennsylvania, relates to the judicial power and reads: 'The *judicial power* of this Commonwealth shall be vested in a Supreme Court, in courts of common pleas, courts of oyer and terminer and general jail delivery, courts of quarter sessions of the peace, orphans' courts, magistrates' courts, and in such other courts as the General Assembly may from time to time establish.' (Italics supplied.) The *fiscal power* is vested in the legislature by Article IX of the Constitution. These are coordinate powers which must be construed to work harmoniously."

## II. *The Inherent Power of the Courts.*

The above provisions of the 1963 Michigan Constitution recognize two fundamental aspects of a government that operates in accordance with the doctrine of separation of powers: (1) the power to appropriate funds for operations of government (popularly known as the power of the purse) is lodged in the legislative branch of the government, and (2) the judicial power with all that is inherent in that power is lodged in one court of justice.

The first question to be considered is whether the inherent power of the courts is such as to permit the writ of mandamus to issue. There have been various definitions and discussions of inherent power. Some of these are as follows:

20 Am Jur 2d, Courts, § 79, pp 440, 441, states:

"Courts have inherent power to do all things that are reasonably necessary for the administration of justice within the scope of their jurisdiction. It has been said that courts have inherent power to summon witnesses and compel their appearance in court, to administer oaths, to issue or to honor letters rogatory, to prevent abuse of process, to provide counsel for the indigent, to have errors in the records corrected, to relieve a party in default, to discipline attorneys at law, to take appropriate action in cases of contempt, and to do various other things to maintain order and to function properly as a court."

"The term 'inherent power of the judiciary' means that which is essential to the existence, dignity, and functions of the court from the very fact that it is a court." *In re Integration of Nebraska State Bar Association* (1937), 133 Neb 283, (275 NW 265, 266, 114 ALR 151).

"That courts have inherent power to do all things that are reasonably necessary for the proper administration of their office within the scope of their jurisdiction is a well-settled principle of law." *In re Surcharge of County Commissioners* (1929), 12 Pa D & C 471, 475.

As was noted in the above-cited case, the inherent power has been used and expense incurred (a) to feed and lodge jurors, (b) for attendance of physicians upon persons who become ill while impaneled, (c) for the transportation of jurors to the *locus in quo* of a matter in controversy, (d) for appointment of custodians of ballot boxes after elections, (e) for the appointment of bodyguards to protect judges from violence in the performance of their duties, (f) for court interpreters, and (g) for office furnishings, law books, and so on.

The inherent power of the courts is undoubtedly one of almost unlimited application since the courts themselves are the ones to say what that power is but the use of inherent power has been and should be exercised with utmost caution. This is particularly true if the use of inherent power will conflict with the legislative power to appropriate.

It was said in *Leahey* v. *Farrell* (1949), 362 Pa 52, (66 A2d 577 [p 579]):

"Control of state *finances* rests with the legislature, subject only to constitutional limitations: *Commonwealth* v. *Liveright, Secretary of Welfare* (1932), 308 Pa 35 (161 A 697). The function of the judiciary to administer justice does not include the power to levy taxes in order to defray the necessary expenses in connection therewith. It is the legislature which must supply such funds. Under the system of division of governmental powers it frequently happens that the functions of one branch may overlap another. But the successful and efficient administration of government *assumes* that each branch will co-operate with the others." [Emphasis by the court.]

In the case of *State, ex rel. Hillis,* v. *Sullivan* (1913), 48 Mont 320 (137 P 392), the Court said (p 395):

"*The very conception of inherent power* [*in the court*] *carries with it the implication that its use is for occasions not provided for by established methods.* When we say that it is primarily the duty and right of the sheriff, either in person or by deputy, to perform all the duties for which an attendant upon the district court may be had at public expense, that if additional attendants are required the county through its board of commissioners shall furnish them, that if the county fail in that regard the court may procure them through the sheriff, we express the normal situation, the orderly method

which must be observed so long as it is adequate in results. *When, however, these methods fail and the court shall determine that by observing them the assistance necessary for the due and effective exercise of its own functions cannot be had, or when an emergency arises which the established methods cannot or do not instantly meet, then and not until then does occasion arise for the exercise of the inherent power.* (Citations omitted.)" [Emphasis by the Court.]

I would use the inherent power of the courts only in those cases where it is essential to assure the continued existence or basic functioning of the courts. The test I would apply would be the ability of a court to operate as a court, not whether the court can operate more conveniently or expeditiously if it has some additional means to carry out its functions. For example, a court stenographer is essential for the proper functioning of a court of record. If one were not provided, a court of record under its inherent power could supply one and compel the payment of an adequate salary.

I cannot agree, however, that the law clerks, probationary officers or a judicial assistant are so essential to the operation of the circuit court of Wayne county as to be a proper case for invoking the doctrine of inherent power of the courts. I agree that the courts would operate more efficiently if the judges were provided with law clerks, if the judges had adequate probation services, and if the court had a judicial assistant. In the case of probation officers, I would concede that the question is indeed a close one. But a line must be drawn and, as I have indicated, I would draw it narrowly. I am convinced that the courts will continue to function even if they are not provided with these services. The cost is not insignificant—at least $200,000 per year. Consequently, this case involves a direct confronta-

tion between the inherent judicial power of the
courts and the legislative power to make appropria-
tions. One or the other must give. Under our
theory of government, the legislature or a subordi-
nate legislative body has the power to appropriate
for all branches of government. Both the executive
and judicial branches are required to present their
fiscal needs to the legislative branch for considera-
tion by that branch and allocation of available
funds to all three branches of government based
upon a legislative decision. This is the process that
should be followed here.

### III. *Statutory Authorization.*

There remains for consideration the extent of
statutory authorization, if any. There may be an
authorization resulting from statutory enactments.
If so, the court proceeds under the statutory author-
ity and not in the exercise of inherent power.

Judge Levin in writing for the Court of Appeals
undertook to uphold the claims of the judges of the
Third Judicial Circuit on the basis of statutory
authorization. (15 Mich App 713.) For the employ-
ment of law clerks and a judicial assistant, he relied
on the revised judicature act, §§ 1471 and 1481,
respectively (MCLA § 600.1471 [Stat Ann 1962 Rev
§ 27A.1471]; MCLA § 600.1481 [Stat Ann 1962 Rev
§ 27A.1481]). He found the power to determine the
county's needs for probation officers and to require
appropriation of funds to be vested in the circuit
judges by virtue of the provisions contained in §§ 7
and 12, ch 11, of the code of criminal procedure
(MCLA §§ 771.7, 771.12 [Stat Ann 1969 Cum Supp
§ 28.1137, Stat Ann 1954 Rev § 28.1142]).

The statute relating to law clerks (§ 1471) is per-
missive as to employment saying only that "circuit
courts * * * may employ law clerks" but imposes

restrictive condition on residence and pay in these words: "Each law clerk shall be a resident of the state of Michigan," and "The compensation of the law clerks shall be fixed by the judges of the court *within the sum appropriated therefor by the legislative body* or bodies of the governmental unit or units, other than the state of Michigan, which pays the compensation of such judges." (Emphasis added.) Section 1481 contains no requirement that a judicial assistant be a resident of the State but does require him to be licensed to practice in all courts of the State of Michigan and in the Supreme Court of the United States with at least 5 years of active practice. Under the statute, "compensation of the judicial assistant shall be fixed by the recommending judges *within the sum appropriated therefor by the legislative body of the governmental unit, other than the state of Michigan, which pays the compensation of such judges.*" (Emphasis added.)

Judge LEVIN seeks to avoid the restriction appearing in the foregoing sections upon the payment of compensation only from appropriated funds by saying: "Having in mind the financial circumstances of most counties of this State, we do not think the legislature meant to vest in the county boards of supervisors the discretion to determine whether the legislation regarding probation officers, law clerks and a judicial assistant would be implemented." To this it might be said, having in mind the financial problems of most counties, it must be doubted that the legislature intended to add to their financial woes, especially in view of the language employed by the legislature in the statute.

The case of *Sturgis* v. *County of Allegan* (1955), 343 Mich 209, is cited, with comment, to support the above-quoted conclusion of Judge LEVIN. An examination of the statutory language under consideration

in that case will disclose that it did not impose a compensation restriction on the employing authorities. The provision read: "That part of the compensation of the county superintendent of schools as is paid from county funds [plus other items] shall be paid by the county treasurer after the same have been authorized by the county board of education from such amounts as may be appropriated therefor by the county board of supervisors."

With regard to the Wayne circuit judges' claim for more probation officers, the Court of Appeals adopted similar reasoning to that applied to law clerks and a judicial assistant. It said (p 725):

"In our opinion sections 7 and 12, ch 11, of the code of criminal procedure also evidence a legislative purpose to vest in circuit judges, not the board of supervisors, the power to determine the county's needs for probation officers, to cause such supporting personnel to be hired, to fix their compensation and, if need be, to direct the legislative body to appropriate the required funds."

In a footnote at the same page, this appears:

"At the time of oral argument before our Court we suggested to counsel that the construction of RJA §§ 1471 and 1481 adopted by the trial judge, namely, that the legislature conferred upon the Wayne circuit court the power to hire and fix the salaries of law clerks and a judicial assistant and to direct the payment of their salaries, might as well be the correct interpretation of sections 7 and 12 of the code of criminal procedure concerning the appointment of probation officers."

To the extent pertinent, the section 7 and 12 provisions are:

"Sec. 7. The circuit court * * * *may also recommend assistant probation officers* who may be

appointed by the Michigan corrections commission
\* \* \* and who shall receive such compensation as
the boards of supervisors of the several counties
shall provide.  (Emphasis added.)

"Sec. 12.  The salary \* \* \* of \* \* \* each
assistant probation officer shall be paid monthly out
of the treasury or treasuries of the county or counties
composing the circuit within which such probation
officer or officers shall act, *where provision has been
made by the board of supervisors of such county or
counties for their payment."*  (Emphasis added.)

These statutes do not empower the circuit court
to employ anybody or to fix compensation.  The
court can recommend appointment and no more.

In my view, the Court of Appeals has confused
the implementation of inherent power with the exer-
cise of statutory authority.  Inherent power, when
it is present, needs no statutory implementation.
But where a court is proceeding under a statute, it
is bound by the statute's terms and conditions.  The
action taken must conform to the statute and may
not be in derogation of that part of the statute which
imposes restrictive conditions.  Because the court
proceeds under the statute, there is no legislative
encroachment upon the inherent power of the
judiciary.

## IV. *Summary.*

In summary: (1) This case is not an appropriate
one for the exercise of the inherent power of the
courts.  It does not involve basic needs for the per-
formance of the judicial function and does involve
a direct confrontation with the legislative power;
(2) none of the statutes under consideration contain
an authorization which permits the courts to proceed
solely upon their own authority without legislative
appropriation of the necessary funds.

I vote to reverse the Court of Appeals and the trial court. I would dismiss the action of the Wayne county judges with prejudice. No costs, a public question being involved.

T. M. Kavanagh, J., concurred with Adams, J.