Kelly, J.
(concurring in part and dissenting in part). I agree that intervening circumstances render moot the issues presented in this case. However, they will arise again and require judicial resolution. Therefore, I agree that the Court should address the issues at this time. I write separately to indicate that I believe that certain of the majority’s findings and its legal analysis are incorrect.
separation of powers—prudential concerns
The complex environment of the trial court requires that we allow chief judges to manage the day-to-day operation of their courts. Judicial Attorneys Ass’n v Michigan, 459 Mich 291, 298-299; 586 NW2d 894 (1998). Accordingly, our court rules provide chief judges latitude in adapting the administration of their courts to their particular circumstances.[1]
*172 Our Legislature is also cognizant of the needs of the circuit courts. Hence, it drafted MCL 600.571 to give them discretion in determining how best to utilize the services of the county clerks. I find no conflict between the statutes regulating the duties of the clerk of the circuit court and our court rules.
The majority apparently agrees with this conclusion. Ante at 165-170. Yet, it engages in further analysis. In doing so, it holds that, as a matter of constitutional law, the judiciary alone may regulate the noncustodial duties of the clerk of the circuit court. By reaching this issue, the majority violates the principle that we will not address a constitutional question unless necessary. Booth Newspapers, Inc v Univ of Michigan Bd of Regents, 444 Mich 211, 234; 507 NW2d 422 (1993). However, because I do not believe *173 that the majority’s analysis supports its conclusion, I offer the following counter-analysis.
counter-analysis
The Michigan Constitution vests this Court with the authority to prescribe the rules of practice and procedure in the courts. Const 1963, art 6, § 5. These attributes of judicial authority “may not be diminished, exercised by, nor interfered with by the other branches of government without constitutional authorization.” In re 1976 PA 267, 400 Mich 660, 663; 255 NW2d 635 (1977).
Moreover, this Court has long recognized that
[i]t is simply impossible for a judge to do nothing but judge; a legislator to do nothing but legislate; a governor to do nothing but execute the laws. The proper exercise of each of these three great powers of government necessarily includes some ancillary inherent capacity to do things which are normally done by the other departments.
Thus, both the legislative department and the judicial department have certain housekeeping chores which are prerequisite to the exercise of legislative and judicial power. And, to accomplish those housekeeping chores both departments have inherently a measure of administrative authority not unlike that primarily and exclusively vested in the executive department. [Wayne Circuit Judges v Wayne Co, 383 Mich 10, 20-21; 172 NW2d 436 (1969), superseded by 386 Mich 1; 190 NW2d 228 (1971) (On Rehearing).]
The majority carries this rationale much further, asserting that, if art 7, § 4 applied to the county clerk’s duties as clerk of the court, it would necessarily violate the separation of powers clause. I believe this assertion is inaccurate.
*174 Our Constitution, in detailing the requirements of the separation of powers, provides:
The powers of the government are divided into three branches; legislative, executive, and judicial. No person exercising the powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution. [Const 1963, art 3, § 2.]
Thus, while our Constitution mandates separation of powers, that mandate is qualified to allow the exercise of one branch’s power by another branch when the Constitution expressly provides for it. It appears to me that art 7, § 4 contains one such qualification.
Article 7, § 4 provides that: “There shall be ... a county clerk . . . whose duties shall be provided by law.” We have consistently held that, when the Constitution requires that details be provided by law, the Legislature alone can provide those details. People v Bulger, 462 Mich 495, 508-509; 614 NW2d 103 (2000).[2] There is no reason to deviate in this case from our previous holdings.
There is some support for the conclusion that the drafters of the Constitution made the county clerk the clerk of the circuit court to provide a check against judicial power.[3] Consequently, it is possible that art 7, *175 § 4 was intended to set limits on the power of the judiciary by taking advantage of the constitutional qualification to separation of powers. If this were the case, there would be no discord between art 7, § 4 and art 3, § 2.[4]
If we ascribe to art 7, § 4 the meaning that I believe the framers of the Constitution intended, it would scarcely render ineffectual the power of the judicial branch. Although the Legislature would have the authority to enact laws regulating the duties of the clerk of the circuit court, it would be bound by the same principles that constrain us. Thus, it could not extend the duties of the clerk beyond those that are purely ministerial; it could do no more than designate which ministerial noncustodial duties the clerk might perform.
I conclude that the Constitution has provided the Legislature with the authority to define and limit the ministerial noncustodial duties that the clerk of the circuit court may perform. However, because neither the Constitution nor any legislative enactments at present limit the clerk’s ministerial duties, the clerk is subject to all the legitimate orders of the court. MCL 600.571(g); Smith v Kent Circuit Judge, 139 Mich 463, 464; 102 NW 1905 (1905).
*176 CONCLUSION
I agree with the majority’s conclusion that the issues presented in this case are moot but should be addressed at this time. Additionally, I agree that the Constitution protects the clerk’s function as custodian of circuit court records. Finally, I agree that there is no conflict between the statutes regulating the duties of the clerk of the court and the court rules.
Beyond these limited observations, I cannot agree with the majority opinion.

 For instance, MCR 8.110(C) provides, in part:
(2) As the presiding officer of the court, a chief judge shall:
*172 * * *
(c) initiate policies concerning the court’s internal operations and its position on external matters affecting the court;
* * * (3) As director of the administration of the court, a chief judge shall have administrative superintending power and control over the judges of the court and all court personnel with authority and responsibility to:
(a) supervise caseload management and monitor disposition of the judicial work of the court,
(b) direct the apportionment and assignment of the business of the court, subject to the provisions of MCR 8.111;
* * *
(f) supervise court finances, including financial planning, the preparation and presentation of budgets, and financial reporting;
* * *
(i) perform any act or duty or enter any order necessarily incidental to carrying out the purposes of this rule.

 The majority apparently believes that, if it interprets art 7, § 4 so that it applies to the clerk’s ministerial noncustodial duties, the executive branch would be empowered to define those duties. Ante at 162.1 believe this is an error that has misled the majority in its analysis.

 See, e.g., the comments of Delegate Paul V. Gadola, a retired circuit judge, who stated:
Remember that the clerk is the one that has charge of all the records of the circuit court. The clerk writes the journal. And, you know, the circuit judges can’t conceal too much, because every day there is a diary written of their doings and they sign it every day, *175 and you can find it 1,000 years from now if the records are kept. [1 Official Record, Constitutional Convention 1961, p 1371.]

 There are possibly other policy considerations at work as well. For instance, the drafters could have been concerned about cost and efficiency. By providing that the county clerk serves as a depository for most of the documents in a county, the drafters potentially made access to important documents more efficient. Also, the drafters may have been concerned that requiring the clerk to perform all the ministerial duties of the circuit court would be too costly. Thus, they may have included a fiscal pressure valve within art 7, § 4 to allow the Legislature to limit the clerks’ duties when the clerks become inefficient.